Brandon J. Witkow (SBN 210443)
bw@witkowlaw.com
Cory A. Baskin (SBN 240517)
cb@witkowlaw.com
witkow | baskin
21031 Ventura Boulevard, Suite 603
Woodland Hills, California 91364
Tel:  818.296.9508
Fax: 818.296.9510

John A. Christy (admitted *pro hac vice*)
jchristy@swfllp.com
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street NE, Suite 800
Atlanta, Georgia 30309
Tel:  404.681.3450
Fax: 404.681.1046

Attorneys for Defendant TickBox TV, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Universal City Studios LLC; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Twentieth Century Fox Film Corporation; Paramount Pictures Corporation; Warner Bros. Entertainment, Inc.; Amazon Content Services, LLC; Netflix Studios, LLC,<br><br>Plaintiffs,<br>vs.<br><br>TickBox TV, LLC,<br><br>Defendant. | Case No. 2:17-cv-07496-MWF(AS)<br><br>**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Filed Concurrently with Declaration of Prof. Amy Bruckman & Declaration of Jeffrey Goldstein]<br><br>Date: Jan. 29, 2017<br>Time: 10:00 a.m.<br>Ctrm: 5A [Hon. Michael W. Fitzgerald] |

# TABLE OF CONTENTS

I. INTRODUCTION. .................................................................................................. 1

II. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS. ........... 2

    A. Defendant Does Not Provide the Product Which Allegedly Facilitates Infringement. ............................................................................................... 3

    B. Plaintiffs Have Not Demonstrated Copyright Infringement by Users of Defendant's Product. .................................................................................. 5

    C. Plaintiffs Cannot Show that Defendants Intend to Induce Copyright Infringement. ............................................................................................... 7

    D. Defendant Does Not Have the Requisite Connections to Third-Party Streaming Websites to be Held Liable for Their Actions. ......................... 9

III. DEFENDANT'S VOLUNTARY ACTS OBVIATE THE NEED FOR INJUNCTIVE RELIEF. ..................................................................................... 10

IV. EVEN IF INJUNCTIVE RELIEF WERE APPROPRIATE, PLAINTIFF'S PROPOSED RELIEF IS NOT TAILORED TO PREVENT THEIR ALLEGED HARM. ............................................................................................. 11

V. CONCLUSION. ................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*American Broadcasting Cos., Inc. v. Aereo, Inc.*
  134 S.Ct. 2498, 2509 (2014) .................................................................................. 6

*Anderson v. United States*
  612 F.2d 1112, 1114 (9th Cir. 1979) ................................................................. 2, 12

*Columbia Pictures Industries, Inc. v. Fung*
  710 F.3d 1020 (9th Cir. 2013) ........................................................................ passim

*Fox Television Stations, Inc. v. FilmOn X LLC*
  966 F.Supp. 2d 30, 46-47 (D.D.C. 2013) .............................................................. 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*
  545 U.S. 913 (2005) .................................................................................... 2, 4, 5, 8

*Perfect 10, Inc. v. Amazon.com, Inc.*
  508 F.3d 1146, 1169 (9th Cir. 2007) ............................................................. 5, 7, 9

*Stanley v. Univ. of So. Cal.*
  13 F.3d 1313, 1320 (9th Cir. 1994) ................................................................. 2, 12

*Twentieth Century Fox Film Corp. v. iCraveTV*
  No. Civ. A. 00-120, 2000 WL 255989, at *7 (W.D. Pa. Feb. 8, 2000) .................. 6

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*
  192 F.Supp. 2d 321, 322 (D.N.J. 2002) ................................................................. 6

*Warner Bros. Entm't Inc. v. WTV Sys., Inc.*
  824 F.Supp. 2d 1003, 1006-07 (C.D. Cal. 2011) .................................................. 6

*Winter v. Natl. Res. Def. Council, Inc.*
  555 U.S. 7, 20 (2008) .................................................................................. 2, 11, 12

*WPIX, Inc. v. ivi, Inc.*
  691 F.3d 275, 278 (2d Cir. 2012) ........................................................................... 6

**STATUTES**

17 U.S.C. § 101 ........................................................................................................ 7

17 U.S.C. § 106 ........................................................................................................ 6

17 U.S.C. § 501(a) .................................................................................................. 6

**OTHER AUTHORITIES**

1976 U.S.C.C.A.N. at 5676-77 .............................................................................. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Defendant TickBox TV, LLC ("TickBox" or "Defendant") sells a hardware device (the "Box") which allows users to perform common functions of a smartphone, tablet, or desktop computer, and display those functions on the user's television screen or other monitor. *See* Declaration of Professor Amy S. Bruckman ("Bruckman Decl.") ¶¶ 6-8, 13. It allows users to search the Internet, access popular social media websites such as Twitter, and download and use applications for the Android operating system. *Id.* Users can download applications and access media content from legitimate, non-infringing content sources. *Id.* ¶ 15. The Box is not sold with any unauthorized or illegal content, nor is unauthorized or illegal software installed. *Id.* ¶¶ 8, 14. Nevertheless, Plaintiffs allege that Defendant is violating their rights because, just as with any other device connected to the Internet, users of the Box can download and install third-party programs – not affiliated in any way with Defendant – through which users could search for and view unauthorized or illegal content from third-party sources.

Plaintiffs filed the Motion for Preliminary Injunction [Doc. No. 28] (hereafter, the "Motion") seeking a vague and overbroad preliminary injunction against Defendant and its officers, directors, agents, servants, and employees from violating copyright law or "distributing any device or software . . . or performing any service that induces or facilitates" violation of copyright law. Plaintiffs also seek mandatory relief to require Defendant to cease doing business, impound its inventory, and hack into already sold devices to remove any software downloaded by purchasers which might "facilitate" infringement of Plaintiffs' copyrighted works.

The Motion must be denied because Plaintiffs have failed to establish a likelihood of success on the merits of their claim. As explained in detail herein, the alleged "infringing conduct" on which this action is based is purportedly committed

by third parties that have no affiliation with Defendant and over which Defendant has no control.  On the other hand, the actions of Defendant and its users can in no way be construed as a copyright violation.  Thus, Plaintiffs cannot show that injunctive relief is necessary to prevent irreparable harm, that the balance of hardships tips in Plaintiffs' favor, or that injunctive relief serves the public interest.  Moreover, even assuming injunctive relief is warranted – which it is not – the proposed injunctive relief sought in the Motion is so unreasonably broad and ambiguous that it cannot be awarded.

## II.   PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits[.]"  *Winter v. Natl. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Id.* at 24.  Mandatory injunctions, as opposed to prohibitory injunctions, are particularly disfavored, and the Court should deny such relief "unless the facts and law clearly favor the moving party."  *Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).

Plaintiffs allege that they can successfully hold Defendant "secondarily liable" under the theory of "contributory infringement" or "inducement liability" as described in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013).  To establish such liability, Plaintiffs must establish "(1) distribution of a device or product, (2) acts of infringement [by users of Defendant's product], (3) an object of promoting its use to infringe copyright, and (4) causation." *Fung*, 710 F.3d at 1032.  Plaintiffs have failed to establish any of these four elements.

### A. Defendant Does Not Provide the Product Which Allegedly Facilitates Infringement.

Defendant admittedly distributes a "device" – the Box. However, the alleged infringing activity on which Plaintiffs' Motion is based is *not* activity performed by the Box. Rather, the heart of Plaintiffs' allegations is that "Themes" – i.e., third-party modifications of the open-source media player software which the Box utilizes – can be installed on the Box by users to facilitate their access to online streams, allegedly including unauthorized streams of Plaintiffs' copyrighted works. Plaintiffs repeatedly refer to these third-party "Themes" as if they *are* the Box, or are otherwise Defendant's product. *See e.g.* Plaintiffs' Motion for Preliminary Injunction (the "Motion") at 2 ("TickBox TV utilizes illicit software tools that scour the Internet for sources of infringing content and deliver links to those infringing sources to TickBox's customers in categories like 'Most Popular,' 'in Theaters,' and 'New Movies' . . . ."). The Motion spends a great deal of time describing these third-party "Themes" and how they operate to search for and stream videos. *See e.g.* Motion at 8-10, 14. But the "Themes" on which Plaintiffs so heavily focus are not the Box, and they have absolutely nothing to do with Defendant. Rather, they are third-party modifications of the open-source media player software which the Box utilizes.

Tellingly, the Motion does very little to describe the functionality of Defendant's product, the Box, and does not identify any objectionable function of the Box absent this third-party software. This is because the Box is simply a small computer which performs common and non-infringing functions of any smartphone, tablet, or desktop computer, and allows its users the ability to download a number of third-party applications that provide users access to authorized streaming content directly from content providers, such as "CBS," "WatchESPN," "The Weather Channel," and "Cartoon Network." Bruckman Decl. ¶ 15.

Plaintiffs also allege, without evidence, that Defendant updates these third-party "Themes" about which Plaintiffs complain and implies that Defendant offers technical support for the "Themes." *See e.g.* Motion at 19, citing Foster Decl. ¶¶ 24-30, 36-44. However, these allegations are patently untrue, and are not supported by any evidence. To the contrary, Defendant has not created or updated any of the "Themes" about which Plaintiffs complain. *See* Declaration of Jeffrey Goldstein ("Goldstein Decl."), ¶ 14. Plaintiffs' own expert correctly explained that the media-player software installed on TickBox devices, Kodi, "is a third-party media player software . . . [that] supports third-party programs called 'addons,'" created by third-parties "not affiliated with Kodi itself." Foster Declaration ¶ 18. Plaintiffs admit that Kodi "is not inherently unlawful." *See* Motion at 5. Professor Foster further explained that third-party programmers can create customized versions of the Kodi software with a set of addons, and bundle the addons to create "builds" or "Themes." Foster Decl. at ¶ 19. Plaintiffs have identified certain of these third-party "builds" or "Themes" which are available on the internet and which can be downloaded by users to view content streamed by third-party websites; however, this same software can be installed on many different types of devices, even one distributed by affiliates of Plaintiff Amazon Content Services, LLC. *See* Bruckman Decl. ¶¶ 16-18.

In *Grokster*, copyright holders sued two software companies, whose software allowed users to share and download copyrighted works through peer-to-peer networks. *Grokster*, 545 U.S. at 919. The Supreme Court held that the respondents could be liable for distributing a "device" – the respondents' software – "with the object of promoting its use to infringe copyright." *Id.* at 936. Similarly, in *Fung*, copyright holders sued the operator of websites which hosted "torrent" files – files necessary for operation of the "BitTorrent protocol" version of peer-to-peer file sharing. *Fung*, 710 F.3d at 1025-29. The 9th Circuit held that Fung's provision of torrent files similarly satisfied the first element of inducement liability. *Id.* at 1033.

4

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

In contrast, Defendant's product – the Box – is not software through which users can access unauthorized content, as in *Grokster*, or even a necessary component of accessing unauthorized content, as in *Fung*. Defendant offers a computer, onto which users can voluntarily install legitimate or illegitimate software. The product about which Plaintiffs complain is third-party software which can be downloaded onto a myriad of devices, and which Defendant neither created nor supplies.

### B. Plaintiffs Have Not Demonstrated Copyright Infringement by Users of Defendant's Product.

"To prove copyright infringement on an inducement theory, [Plaintiffs must] adduce evidence of actual infringement by users of [Defendant's] services." *Fung*, 710 F.3d at 1034. With the exception of Plaintiffs' own employees and expert, Plaintiffs have not pointed to any evidence that purchasers of the Box have actually accessed Plaintiffs' copyrighted material. *See*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (finding there was "no evidence in the record directly establishing that [Defendant's] users [committed infringement], and the district court did not err in declining to infer the existence of such evidence").

More importantly, even if Plaintiffs had shown actual access to infringing material by Defendant's users, they have not shown that such access would constitute actual infringement. Plaintiffs allege that they have the exclusive right "to perform" certain copyrighted works "publicly," that "transmission" of such public works violates such exclusive right, and Internet streams constitute such transmission in violation of Plaintiffs' exclusive right to public performance. *See* Motion, at § III.2. Plaintiffs have not alleged that Defendant, its product, or users of Defendant's product have "transmitted" any of Plaintiffs' copyrighted works; instead, Plaintiffs allege that users of Defendant's product have the ability to view performances which violate Plaintiffs' exclusive right to perform its copyrighted works. However, Plaintiffs have not cited any authority by which viewers of public

performances can be held liable for violation of a copyright holder's rights "to perform the copyrighted works publicly." *See Fung*, 710 F.3d at 1034 ("uploading and downloading copyrighted material" violate the right to distribution under § 106(1) and to reproduction under § 106(3), respectively); *American Broadcasting Cos., Inc. v. Aereo, Inc.*, 134 S.Ct. 2498, 2509 (2014) (finding service which transmitted Internet streams liable under § 106(4)); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278 (2d Cir. 2012) (in which the defendant "captured and retransmitted plaintiffs' copyrighted television programming"); *Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F.Supp. 2d 1003, 1006-07 (C.D. Cal. 2011) (in which defendants "transmit the performance via the internet to the customer"); *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F.Supp. 2d 30, 46-47 (D.D.C. 2013) (in which defendant captured television signals and broadcasted them over the Internet to defendant's users); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F.Supp. 2d 321, 322 (D.N.J. 2002) (Video Pipeline violated exclusive right to public performance by transmitting portions of copyrighted works from Video Pipeline's website to users); *Twentieth Century Fox Film Corp. v. iCraveTV*, No. Civ.A. 00-120, 2000 WL 255989, at *7 (W.D. Pa. Feb. 8, 2000) (defendant captured television programming, converted such television signals into computerized data, and streamed them over the Internet).

   The text of the statute itself does not impose liability for viewing streaming content. Under the statute, an "infringer" is one who violates any of the exclusive rights of the copyright owner. 17 U.S.C. § 501(a). Plaintiffs complain that their exclusive right under 17 U.S.C. § 106(4) is at issue here: "in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly." "To 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process or . . . to show its images in any sequence or to make the sounds accompanying it audible." To perform "publicly" means "(1) to perform or

6
**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1  display it at a place open to the public or at any place where a substantial number of
2  persons outside of a normal circle of a family and its social acquaintances is
3  gathered; or (2) to *transmit or otherwise communicate a performance* to a place
4  specified by clause (1) or the public[.]"  17 U.S.C. § 101 (emphasis added); *see, also*
5  1976 U.S.C.C.A.N. at 5676-77 ("Although any act by which the initial performance
6  or display is transmitted, repeated, or made to recur would itself be a "performance"
7  or "display" under the bill, it would not be actionable as an infringement unless it
8  were done "publicly" as defined in section 101.")  Plaintiffs do not allege that
9  Defendant, Defendant's product, or the users of Defendant's product "transmit or
10 otherwise communicate a performance" to the public; instead, Plaintiffs allege that
11 users view streaming material on the Box.  It is clear precedent in this Circuit that
12 merely viewing copyrighted material online, without downloading, copying, or
13 retransmitting such material, is not actionable.  *Perfect 10*, 508 F.3d at 1169
14 (Plaintiff failed to show direct infringement by users of Google's search engine who
15 viewed unauthorized, copyrighted works, where plaintiff presented no evidence that
16 users saved copyrighted images to their computers and, to the extent temporary
17 "cache" copies of images were downloaded, the same would constitute fair use.)

18 Plaintiffs inappropriately seek judicial legislation by attempting to hold
19 Defendant liable for copyright infringement based upon acts which are not
20 infringing under the plain language of the statute.  Because viewing copyrighted
21 material is not a public performance of such copyrighted material, Plaintiffs have
22 not pointed to actual acts of infringement by users of Defendant's product.

23     **C.**     **Plaintiffs Cannot Show that Defendants Intend to Induce**
24             **Copyright Infringement.**

25 As set forth above, the activities of Defendant's users about which Plaintiffs
26 complain do not violate applicable copyright law.  *See* II.B, *supra*.  If Defendant's
27 users are not infringing upon Plaintiffs' rights, the Court cannot infer that Defendant
28 intended to induce its users to violate Plaintiffs' rights.

7

1   Moreover, this case is factually distinguishable from other cases in which
2   defendants were found to induce users to commit copyright infringement.  For
3   example, in *Grokster*, the respondents expressly stated their intent to replace
4   Napster, a known source of copyright infringement in the marketplace.  *Grokster*,
5   545 U.S. at 939.  The respondents "respond[ed] affirmatively to requests for help in
6   locating and playing copyrighted materials." *Id.* at 938.  The respondents directly
7   advertised the ability to access specific, copyrighted works, and made their software
8   searchable for "Top 40" songs which "were inevitably copyrighted." *Id.* at 926.
9   The respondents directly benefitted from users' copyright infringement by selling
10  advertisements, which generated more revenue as illegal use increased. *Id.* at 939.

11  By contrast, Defendant does not profit if users access unauthorized content.
12  *See* Goldstein Decl. ¶¶ 14, 17.  Defendant does not sell or otherwise provide
13  unauthorized content or software to access unauthorized content, and does not sell
14  advertising space as did the *Grokster* respondents. *Id.* ¶¶ 10, 14, 16.  Defendant's
15  place in the market does not replace or compete with some known copyright
16  infringement[1]; it competes with other streaming hardware devices, including the
17  "Firestick" sold by affiliates of Plaintiff Amazon Content Services, LLC. *Id.* ¶ 9.

18  Plaintiffs assert that Defendant has not taken steps "to develop filtering tools
19  or other mechanisms to diminish the infringing activity by its customers."  This
20  assumes that Defendant's customers were committing some infringement, but they
21  were not. *See* Section II.B., *supra*.  It further assumes that Defendant was aware of
22  users' infringement and had a duty and ability to filter users' activities, which it
23  does not. *See Grokster*, 545 U.S. at 939, n 12 ("Of course, in the absence of other
24  evidence of intent, a court would be unable to find contributory infringement

---

[1] Plaintiffs assert that Defendant is "aiming to satisfy a known source of demand for copyright infringement" by competing with Netflix, Hulu, and Amazon Prime. Serving as an alternative to well-known streaming services is in no way analogous to *Grokster*, in which the defendants aimed to replace Napster, a known infringer.

8
**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

liability merely based on a failure to take affirmative steps to prevent infringement, if the device was otherwise capable of substantial noninfringing uses.")

Finally, no current advertisement or instruction from Defendant encourages or instructs users to access unauthorized streams. *See* Goldstein Decl. ¶ 25. To the contrary, Defendant requires users to agree *not* to use the Box for illegal purposes. *Id.* ¶¶ 7-8. In short, Defendant does not induce its customers to violate Plaintiffs' copyrights.

### D. Defendant Does Not Have the Requisite Connections to Third-Party Streaming Websites to be Held Liable for Their Actions.

Undoubtedly, there are third-party sources which "transmit" copyrighted works in violation of the copyright holders' exclusive rights to perform such works. However, when Plaintiffs' theory of contributory liability flows from the infringement of unknown third parties, with whom Defendant has no contact, much less control, the Motion entirely breaks down. Plaintiff has not alleged any element of contributory infringement vis-à-vis these unknown third-parties. Plaintiff has not alleged that Defendant has distributed any product to those third parties, that Defendant has committed any act which encourages those third parties' infringement, or that any act of Defendant has, in fact, caused those third parties to infringe. *See Fung*, 710 F.3d at 1032. Plaintiffs have not shown how Defendant's advertisements to its potential users or technical support for its users in any way incentivizes or encourages third parties to transmit copyrighted works.

To the extent Plaintiffs seek to argue that Defendant should or could take affirmative steps to halt such third-party infringement, such argument is not supported by precedent in this Circuit. In *Perfect 10*, the copyright holder complained that Google's search engine facilitated copyright infringement by linking users to websites, from which they could view or download copyrighted images. *Perfect 10, Inc.,* 508 F.3d at 1157. Because Google's customers were not directly infringing, the copyright holder sought to hold Google vicariously liable for

9
**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1  the acts of the third-party website operators. *Id.* at 1169, 1172-74. The Ninth Circuit
2  affirmed the trial court's conclusion that Perfect 10 did not establish a likelihood of
3  success on the merits, noting that it had not established any contractual or legal right
4  of Google to stop or limit the infringement of third-party websites. *Id.* at 1174.
5  "Google cannot stop any of the third-party websites from reproducing, displaying,
6  and distributing unauthorized copies of Perfect 10's images because that infringing
7  conduct takes place on the third-party websites." *Id.*  Similarly, Defendant has no
8  contracts with third-party infringers to provide unauthorized streams, is not aware of
9  what individuals or entities provide such streams, and has no ability to prevent third-
10 party infringers from infringing on Plaintiffs' rights. *See* Goldstein Decl. ¶¶ 17-19.

### III. DEFENDANT'S VOLUNTARY ACTS OBVIATE THE NEED FOR INJUNCTIVE RELIEF.

The purpose of an injunction is to restrain conduct and preserve the status quo.  If the conduct about which Plaintiffs complain is not continuing and Plaintiffs are not being harmed, then there is no need for an injunction because there is nothing to restrain.  The core of Plaintiffs' complaint is that certain Themes of the Kodi media player software enable users to search for and access Plaintiffs' copyrighted works.  Although Defendant does not agree that the access Plaintiff has identified constitutes copyright infringement, after receiving Plaintiffs' Complaint, Defendant voluntarily took steps to remove links to download those Themes on the Box, intending to remove all such links.  *See* Goldstein Decl. ¶¶ 21-23.  Inadvertently, some links remained at the time Plaintiffs filed the Motion; however, any remaining links to such Themes have now been removed from the Box interface.  *Id.* ¶¶ 23-25.  Defendant does not provide instructions on how to use the Box to access unauthorized content.  *Id.* ¶ 28.  Nor is such access easy or obvious to users of the Box.  Bruckman Decl. ¶ 16.  Although access to unauthorized streams is possible, it is no easier or different on the Box than it would be on a computer or mobile phone.  *Id.* ¶¶ 16-18.

1  Likewise, with no admission that its prior advertisements encouraged
2  infringement, Defendant has voluntarily modified its advertising and webpage to
3  attempt to appease Plaintiffs and resolve their complaint amicably. *See* Goldstein
4  Decl. ¶ 26-28. The current advertisements are substantially similar to that of other
5  streaming devices, such as Amazon Firestick and Roku, which encourage users to
6  stream television programs and movies. *Id.* Plaintiffs allege that Defendant
7  somehow continues to encourage infringement with phrases like, "[T]urn your TV
8  into a content filled home theatre system enjoying thousands of movies, TV shows
9  and apps like Youtube, HBO Now and many many more . . ." and "You Need to
10 Hurry" because "the popularity of TickBox TV™ is growing by leaps and bounds
11 every day." *See* Motion at 13-14. Such language is consistent with advertisements
12 for other similar devices, including Amazon's Firestick. *See* Goldstein Decl. ¶ 27.
13 Moreover, Plaintiffs' quarrel with the specific language of Defendant's advertising
14 highlights that this matter should not be resolved with a broad and ambiguous
15 injunction.

### IV. EVEN IF INJUNCTIVE RELIEF WERE APPROPRIATE, PLAINTIFF'S PROPOSED RELIEF IS NOT TAILORED TO PREVENT THEIR ALLEGED HARM.

It is well established that "relief must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." *See Winter*, 508 F.3d at 886; *F.T.C. v. John Beck Amazing Profits, LLC*, No. 2:09-cv-4719-FMC (FFM), 2009 WL 7844076, AT *4 (C.D.Cal. Nov. 17, 2009) (citing *Price v. City of Stockton*, 390 F.3d 1104, 1117 (9th Cir. 2004)) ("an injunction must be narrowly tailored ... to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law'"). Here, the proposed injunction facially oversteps these bounds by enjoining all persons in any way associated with Defendant from "infringing in any manner." *See* [Proposed] Order Granting Plaintiffs' Motion for Preliminary Injunction at 2. Moreover, the proposed

injunction is so ambiguous that almost any act could be construed to violate it. For example and without limitation, the proposed injunction would enjoin "all of [Defendants'] officers, directors, agents, servants . . . employees . . . persons in active concert or participation or in privity with any of them . . . from . . . performing any service that induces or facilitates" public performance of Plaintiffs' copyrighted works. *Id.* Read literally, the injunction would seem to prevent anyone affected thereby from doing anything which "facilitates" even legitimate, authorized public performances. Without any definition or limitation, no one "in privity" with Defendant or its employees and officers can, for example, provide any computer services, for fear that the computer might one day be used to watch a movie. More specifically and significantly, the injunction would prevent officers and employees of Defendant from interacting with SideTick, LLC, a related entity which does hold legitimate, contractual rights to display certain copyrighted works. *See* Goldstein Decl. ¶¶ 29-32.

Further, in order to be entitled to a preliminary injunction, Plaintiffs must demonstrate that the balance of hardships tips in their favor. *Winter*, 555 U.S. at 20. "In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (internal citations and quotation marks omitted). Mandatory injunctions, as opposed to prohibitory injunctions, are disfavored, and the Court should deny such relief "unless the facts and law clearly favor the moving party." *Stanley v. Univ. of So. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979).

Not only do Plaintiffs seek a vague and overly broad injunction, but the request – which includes disfavored mandatory relief – would impose an impermissible hardship on Defendant. Namely, the injunctive relief sought would shut down Defendant's business, impound all of Defendant's inventory, and require Defendant to hack into and delete content which its customers have downloaded to

1  the Box – an act which Defendant has no right to perform, and which could expose
2  Defendant to thousands of potential claims. *See* [Proposed] Order Granting
3  Plaintiffs' Motion for Preliminary Injunction.
4      Plaintiffs, meanwhile, have failed to identify any hardship whatsoever.
5  Plaintiffs have stated only hypothetically that users of the Box could be accessing
6  copyrighted works by downloading certain software, but have failed to show that
7  users have actually downloaded such software or accessed Plaintiffs' copyrighted
8  works, or that such access would infringe Plaintiffs' rights.  They have not
9  attempted to quantify the extent of such access, much less identify alleged damages
10 from such access.  Nor have they articulated how the injunction they seek would
11 lessen their hardship, where the "Themes" about which they complain are not
12 created or distributed by Defendant, are readily available from third parties on the
13 internet, and can be installed on many types of devices.  Notably, while vaguely
14 alleging that they are being "irreparably" harmed, Plaintiffs waited nearly two
15 months after filing the Complaint to seek a preliminary injunction in this case.
16     Rather than meet their burden of showing some irreparable harm tips the
17 balance of hardships in their favor, Plaintiffs rely only on the unsupported
18 assumption that Defendant has no cognizable interest in operating its business and
19 selling the Box – which does not currently provide any links to the software about
20 which Plaintiffs complain.  The proposed injunction would entirely destroy
21 Defendant as an enterprise – tantamount to granting Plaintiffs the full relief they
22 seek without a trial on the merits – without curing any alleged "hardship" on
23 Plaintiffs.  Plaintiffs have not demonstrated that the balance of hardships weigh in
24 their favor, and therefore are not entitled to the "extraordinary" remedy they seek.
25 *See Winter*, 555 U.S. at 24.
26 **V.  CONCLUSION.**
27     For the foregoing reasons, Plaintiffs are not entitled to the preliminary
28 injunction they seek, because Plaintiffs have not demonstrated that they are likely to

succeed on the merits of their claims, Plaintiffs cannot identify any continuing harm in the absence of a preliminary injunction, and the balance of hardships weighs decidedly in Defendant's favor. Accordingly, the Motion must be denied.

Dated: December 28, 2017     witkow | baskin

                                          Schreeder, Wheeler & Flint, LLP

                                          By:  /s/ Brandon J. Witkow
                                                  Brandon J. Witkow

                                          Attorneys for Defendant Tickbox TV, LLC