KELLY M. KLAUS (CA Bar No. 161091)
kelly.klaus@mto.com
ELIZABETH A. KIM (CA Bar No. 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

MICHAEL B. DESANCTIS (admitted *pro hac vice*)
michael.desanctis@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Telephone: (202) 220-1100
Facsimile: (202) 220-2300

KAREN R. THORLAND (CA Bar No. 172092)
karen_thorland@mpaa.org
MOTION PICTURE ASSOCIATION OF AMERICA, INC.
15301 Ventura Blvd., Building E
Sherman Oaks, California 91403
Telephone: (818) 935-5812

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Universal City Studios Productions LLLP; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Twentieth Century Fox Film Corporation; Paramount Pictures Corporation; Warner Bros. Entertainment Inc.; Amazon Content Services, LLC; Netflix Studios, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> Tickbox TV LLC, <br><br> Defendant. | Case No. 2:17-cv-07496-MWF(AS) <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: Jan. 29, 2018 <br> Time: 10:00 a.m. <br> Ctrm: 5A (Hon. Michael W. Fitzgerald) <br> Filed concurrently: <br>   Reply Declaration of Prof. Ian Foster |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 2

    A. TickBox's Post-Complaint Modifications to its Messaging and User Interface Do Not Change the Illegal Nature of Its Operations or Obviate the Need for Injunctive Relief ........................... 2

    B. TickBox's Merits Arguments Ignore the Legal and Evidentiary Basis for Plaintiffs' Claims ................................................................... 4

        1. TickBox Ignores the Overwhelming and Undisputed Evidence that the TickBox TV Device Was Designed for Infringing Use ................................................................................... 5

        2. Tickbox Intentionally Induces Its Customers to Access Unauthorized Streams Made by Third-Party Sources that Directly Infringe Plaintiffs' Public Performance Right ............... 6

        3. TickBox's Objective of Promoting and Inducing Infringement Is Clear ................................................................. 9

        4. TickBox Causes Infringement ..................................................... 11

    C. TickBox Is Causing Irreparable Harm to Plaintiffs .............................. 12

    D. The Balance of Hardships Strongly Favors Plaintiffs ......................... 13

    E. Enjoining TickBox Will Further the Public Interest ............................ 15

III. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*A&M Records, Inc. v. Napster, Inc.*,
　1114 F. Supp. 2d 896 (N.D. Cal. 2000), *aff'd in relevant part*, 239
　F.3d 1004 (9th Cir. 2001) ................................................................................ 11

*Adarand Constructors, Inc. v. Slater*,
　528 U.S. 216 (2000) ........................................................................................... 1

*Already, LLC v. Nike, Inc.*,
　568 U.S. 85 (2013) ............................................................................................. 3

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
　134 S. Ct. 2498 (2014) ....................................................................................... 7

*Arista Records LLC v. Usenet.com, Inc.*,
　633 F. Supp. 2d 124 (S.D.N.Y. 2009) .......................................................... 6, 11

*Columbia Pictures Indus., Inc. v. Fung*,
　710 F.3d 1020 (9th Cir. 2013) ................................................................. 7, 8, 11

*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*,
　11 F. Supp. 2d 1179 (C.D. Cal. 1998) ............................................................... 3

*Disney Enters., Inc. v. VidAngel, Inc.*,
　224 F. Supp. 3d 957 (C.D. Cal. 2016) ............................................................. 13

*Disney Enters., Inc. v. VidAngel, Inc.*,
　869 F.3d 848 (9th Cir. 2017) ............................................................... 13, 14, 15

*Fox TV Stations, Inc. v. FilmOn X LLC*,
　No. 13-cv-00758-RMC ..................................................................................... 14

*LGS Architects, Inc. v. Concordia Homes of Nevada*,
　434 F.3d 1150 (9th Cir. 2006) .................................................................. 1, 2, 3

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
　518 F. Supp. 2d 1197 (C.D. Cal. 2007) ......................................................... 3, 4

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
　545 U.S. 913 (2005) ................................................................................ 1, passim

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Netflix Studios, LLC v. Dragon Media Inc.*,
  No. 2:18-cv-00230-JAK-GHS (C.D. Cal. 2018) .................................................. 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...................................................................... 6, 7, 8

*Summit Entm't, LLC v. Beckett Media, LLC*,
  No. CV 09-8161 PSG, 2010 WL 147958 (C.D. Cal. Jan. 12, 2010) ..................... 3

*U2 Home Entm't, Inc. v. Bowery Music City, Inc.*,
  No. 03 Civ. 8909(RJH), 2003 WL 22889738 (S.D.N.Y. Dec. 8, 2003) ........................................................................................................................... 14

*Warner Bros. Entm't Inc. v. WTV Sys., Inc.*,
  824 F. Supp. 2d 1003 (C.D. Cal. 2011) ................................................................ 7

**REGULATORY CASES**

*Canadian Lumber Trade Alliance v. United States*,
  441 F. Supp. 2d 1259 (CIT 2006) ......................................................................... 4

**FEDERAL STATUTES**

17 U.S.C. § 503(a) and (b) ...................................................................................... 14

**TREATISES**

Restatement (Second) of Torts § 8A cmt. b (1965) ................................................... 8

## I.   INTRODUCTION

TickBox's Opposition whistles past the undisputed evidence of its intentional promotion of TickBox TV as a device for the mass infringement of Plaintiffs' Copyrighted Works.  TickBox instead claims it has changed its ways, is no longer shipping TickBox devices with easy-to-install "Themes" that give customers ready access to infringing streams, and that Plaintiffs' motion is therefore moot.  That is simply wrong.

It is settled law in this Circuit that a defendant's voluntary cessation of illegal activity does not moot a plaintiff's entitlement to injunctive relief unless it is "'*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)).  TickBox has not come close to making such a showing, and the evidence shows TickBox has exaggerated its claimed conversion.  TickBox's purported December software update did nothing to change the experience for existing users to utilize the TickBox software interface to access infringing streams.  Those customers need only click the same "Media Player" tile that existed before and after on TickBox's interface, and those customers can launch the same Kodi "Themes" and illicit addons that they previously installed at TickBox's urging.

TickBox's arguments against Plaintiffs' showing of likely success on the merits are likewise misguided.  Contrary to TickBox's argument, Plaintiffs are not suing TickBox merely for distributing an Android box.  Plaintiffs' claims are based on the mountain of evidence that TickBox has distributed TickBox TV "*with the object of promoting its use to infringe copyright,* as shown by clear expression or other affirmative steps taken to foster infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005) (emphasis added).  The evidence that TickBox advertised the use of its device for infringing purposes is clear, overwhelming, and undisputed.  The Supreme Court held in *Grokster* that

-1-

encouraging others to infringe via advertising presents the "classic case" of inducing infringement, and that a defendant like TickBox that induces "is liable for the resulting acts of infringement by third parties." *Id*. at 935-36. Plaintiffs' motion should be granted.

## II. ARGUMENT

### A. TickBox's Post-Complaint Modifications to its Messaging and User Interface Do Not Change the Illegal Nature of Its Operations or Obviate the Need for Injunctive Relief

TickBox attempts to sidestep the overwhelming evidence of its promotion of TickBox TV as a tool for infringement by arguing that it has made post-Complaint changes to its website and user interface. TickBox goes so far as to proffer an expert who has no apparent knowledge of, or experience with, TickBox's pre-December 21, 2017 marketing and promotion of TickBox TV or TickBox's pre-Complaint user interface. But TickBox cannot sweep aside its prior flagrant conduct, nor can it rely on facts showing that TickBox explicitly encouraged its customers to purchase and use TickBox TV to access infringing streams. Neither controlling Ninth Circuit authority nor the evidence in the record supports TickBox's assertion that its voluntary actions "obviate the need" for injunctive relief. (Opp. at 10.)

The Ninth Circuit and district courts throughout this Circuit have repeatedly rejected arguments that a defendant's voluntary cessation of illegal activity renders a plaintiff's request for injunctive relief unnecessary or moot. In *LGS Architects*, for example, the defendant argued that a request for a preliminary injunction was moot because it had "no intent" to engage in any future infringement and submitted an affidavit from its president in support of its assertion. 434 F.3d at 1153. The court rejected the defendant's argument because it was not "absolutely clear" the alleged

misconduct would not recur, and the defendant would have been "free to return to [their] old ways."[1] *Id.* at 1153-54 (internal quotation marks omitted).

So, too, in this case. TickBox offers only self-serving statements that it has changed its advertising and removed the "links to download" illicit Kodi "Themes" in the user interface. (*See* Opp. at 10; Goldstein Decl. ¶¶ 21-25.) Nothing prevents TickBox from adding the now-removed Kodi "Themes" with illicit addons back to its "Select Streaming Channels" menu. Indeed, the evidence shows that it is relatively easy and straightforward for TickBox to make changes to its user interface and to push out any such changes as software updates to its customers. Foster Decl. ¶¶ 37-39; Reply Declaration of Prof. Ian Foster ("Foster Reply Decl.") ¶¶ 10-12. Whatever TickBox did after Plaintiffs filed their complaint or this motion, TickBox can easily undo absent an injunction. TickBox's assertions about its intentions fall far short of meeting its burden of demonstrating it is "absolutely clear" that it "will permanently refrain from future infringement." *LGS Architects*, 434 F.3d at 1154.

More importantly, TickBox's December 11, 2017 software update did *nothing* to change its customers' access to *previously installed* "Themes" and illicit addons. As Prof. Foster explains in his Reply Declaration, a TickBox customer who downloads and installs the December 11, 2017 update will view a superficially

---

[1] *Accord Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends"); *Columbia Pictures Indus., Inc. v. Miramax Films Corp.,* 11 F. Supp. 2d 1179, 1183 (C.D. Cal. 1998) ("[A] preliminary injunction will serve to prevent future exploitation of the complained of advertising," even where defendants "voluntarily ceased use of the complained of advertisements."); *Summit Entm't, LLC v. Beckett Media, LLC*, No. CV 09-8161 PSG (MANx), 2010 WL 147958, at *4 (C.D. Cal. Jan. 12, 2010) (preliminary injunction appropriate where infringing defendant "failed to demonstrate irrefutably a total cessation of the activities complained of"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220-22 (C.D. Cal. 2007) (granting permanent injunction because "[e]ven if this Court gave some credence to StreamCast's alleged reform, it could immediately return to its prior ways").

altered "Select Streaming Channels" menu. Foster Reply Decl. ¶¶ 18-22. With a single click of the "Media Player" button, however, that TickBox customer has instant access to the same illicit addons and streams of infringing content as he or she did prior to the update. *Id.* ¶¶ 19-20.



Customers can also access all of the Kodi "Themes" and illicit addons that they downloaded and TickBox previously featured on its "Select your Theme" menu by clicking the "My Apps" tile on the home screen. *Id.* ¶¶ 21-22. As such, TickBox's "voluntary actions" do nothing to change the user experience or customers' easy access to illicit addons. *Id.*

Only injunctive relief can "'take away defendant's discretion not to obey the law.'" *Grokster*, 518 F. Supp. 2d at 1222 (quoting *Canadian Lumber Trade Alliance v. United States*, 441 F. Supp. 2d 1259, 1266 (CIT 2006)).

**B.  TickBox's Merits Arguments Ignore the Legal and Evidentiary Basis for Plaintiffs' Claims**

The evidence is clear that TickBox is infringing Plaintiffs' Copyrighted Works by intentionally inducing their widespread infringement.

-4-

### 1. TickBox Ignores the Overwhelming and Undisputed Evidence that the TickBox TV Device Was Designed for Infringing Use

TickBox concedes that it distributes a "device," i.e. the TickBox TV, but argues that neither TickBox nor TickBox TV facilitates infringement. This is factually and legally false.

First, TickBox claims that it does not select the "Themes" presented in the "Select your Theme" menu. (Opp. at 3.) But the evidence is undisputed that when a TickBox TV customer turned on TickBox TV for the first time and followed the on-screen instructions, TickBox TV presented customers with several different Kodi "Themes"[2] to choose from, each of which featured popular illicit streaming addons. Foster Decl. ¶¶ 17-22. Moreover, the uncontroverted evidence demonstrates that TickBox does, in fact, control the selection of "Themes" available to customers. *Id.* ¶¶ 38-39. Prof. Foster observed that TickBox could and did in fact change and update the options it presented to customers in October and December 2017. *Id.*; Foster Reply Decl. ¶ 17. None of those changes, however, prevented customers from accessing infringing streams.

TickBox falsely claims that the presence of these "Themes" on TickBox devices "have nothing to do with Defendant." (Opp. at 3.) To the contrary, TickBox intentionally chooses which "Themes" to include on its "Select your Theme" menu for the TickBox TV interface, and TickBox pushes out automatic software updates to its customers' TickBox TV devices. Foster Decl. ¶¶ 37-39, 41. TickBox even helpfully told its customers that "We have noticed that a few of the themes are not returning searches for movies or shows. We have had good experience[s] with the Wookie Theme at this time. Please try that theme at this time." *Id.* ¶ 24, Fig. 11.

---

[2] After the filing of this lawsuit, TickBox removed the original seven "Themes," but added other "Lodi Black, a Theme which included several of the original seven "Themes." *See* Foster Decl. ¶¶ 44-46.

-5-

Second, TickBox's argument that TickBox TV is "simply a small computer" capable of legitimate uses does not insulate TickBox from liability for its intentional inducement of infringement. TickBox's liability arises based on its advertising and promoting TickBox TV as a tool for infringing use, and from designing and including software on the device that encourages access to infringing streams from third-party sources. (Mot. at 4-12; Klaus Decl. ¶ 8, Exs. A-F; Foster Decl. ¶¶ 24, 29, 32-33.) The Supreme Court rejected the same argument TickBox makes: "where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement, *Sony*'s staple-article rule will not preclude liability." *Grokster*, 545 U.S. at 935.

### 2. Tickbox Intentionally Induces Its Customers to Access Unauthorized Streams Made by Third-Party Sources that Directly Infringe Plaintiffs' Public Performance Right

The evidence overwhelmingly demonstrates that TickBox intentionally induces its customers to access unauthorized streams made by third-party sources that directly infringe Plaintiffs' public performance right.

First, TickBox is wrong when it argues that Plaintiffs failed to provide any evidence that customers of TickBox TV are receiving infringing streams. (Opp. at 5.) Prof. Foster and Plaintiffs' investigators accessed infringing content on TickBox TVs in November 2017. Foster Decl. ¶¶ 31-36, 45; Van Voorn Decl. ¶¶ 4-6. That suffices to establish the underlying direct infringement. *See, e.g.*, *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 n.16 (S.D.N.Y. 2009) ("Courts routinely base findings of infringement on the actions of plaintiffs' investigators.").

Second, citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), TickBox argues that because its customers are not transmitting performances of Plaintiffs' Copyrighted Works, TickBox cannot be held secondarily liable. (Opp. at 7.) TickBox's reliance on *Perfect 10* is misplaced. In *Perfect 10*, the court

considered multiple theories of direct infringement, including by the defendant's users and by third-party websites. *Id.* at 1169. Though the plaintiff there failed to show direct infringement by users, the court nonetheless held the defendant *could* be held contributorily liable for infringement based on direct infringement by third-party websites. *Id.* at 1169-71. Nor does *Perfect 10* say anything about the public performance right or whether a third party that streams content without authorization is a direct infringer. The law is clear that such a party is a direct infringer. *See Am. Broad. Cos., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2509 (2014); *see also Warner Bros. Entm't Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003, 1010 (C.D. Cal. 2011) ("Z*ediva*") (Internet streaming of movies and television shows from remote DVD players to users is a public performance); Mot. at 17-18. *Perfect 10* does not change the fact that where, as here, a defendant's customer uses the product as intended and encouraged—to receive infringing streams transmitted by a third party—there is inducement liability for the resulting infringement.

      TickBox further confuses the issue by suggesting that, for all forms of secondary liability, *Perfect 10* requires that a defendant have the right and ability to control the acts of third parties or that the defendant obtain a direct financial benefit from the infringing activity. (Opp. at 8.) Those are elements of a claim for vicarious liability, but as the *Perfect 10* court recognized, contributory liability and inducement claims are distinct claims that require no such showing. *See Perfect 10*, 508 F.3d at 1170-73; *see also Grokster*, 545 U.S. at 930, n.9 ("Because we resolve the case based on an inducement theory, there is no need to analyze separately MGM's vicarious liability theory.").

      Third, TickBox cannot avoid liability for inducing copyright infringement merely because the direct acts of infringement that result from its conduct also involve wrongful conduct by third parties. *Fung* and *Grokster* foreclose that argument. In *Fung*, the defendant operated websites that organized and altered "tracker" torrent files that allowed users to more easily locate infringing content

available on third-party sources. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1028-29 (9th Cir. 2013). Fung did not host any infringing content. Nor did his websites "provide the client programs [individuals] used to download" the content; "nor did he develop the BitTorrent protocol," which the end-users utilized to obtain infringing downloads. *Id.* at 1032-33. Fung did encourage his users to upload "tracker" torrent files to his websites, but those files did not contain any copyrighted content. Instead, users utilized the "tracker" torrent files to locate third-party sources of infringing content. Fung and the users of his sites thereby contributed to an ecosystem of infringement and encouraged further infringing activity by making it easier for others to locate and obtain infringing content. These "culpable actions resulting in the impermissible reproduction of copyrighted expression" were sufficient to support inducement liability. *Id.* at 1033.

*Fung*'s analysis follows from *Grokster*'s direction to analyze secondary liability rules "in light of rules of fault-based liability derived from the common law." *Perfect 10*, 508 F.3d at 1170 (internal quotation marks omitted). These common law rules teach that where an "actor knows that the consequences are certain, or substantially certain, to result from his [or her] act, and still goes ahead, he [or she] is treated by the law as if he [or she] had in fact desired to produce the result." *Id.* at 1171 (quoting Restatement (Second) of Torts § 8A cmt. b (1965)). TickBox's attempt to distinguish *Grokster* and *Fung* as "peer-to-peer file sharing" cases is a distinction without a difference. Indeed, their framework describes TickBox to a tee. TickBox knowingly and intentionally acts as an intermediary between its customers and third-party sources that transmit infringing streams of content. That TickBox or its customers do not transmit streams does not alter the infringing nature of TickBox's activities. Each time a TickBox customer selects a link to a third-party source of infringing content, and that source transmits an infringing stream to the TickBox TV user, the third-party source directly infringes the public performance right. TickBox, by promoting and encouraging its

customers to access illegal streams, intentionally and materially increases the volume of infringing streams. *See, e.g.*, *Perfect 10*, 508 F.3d at 1172 ("There is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials."). TickBox serves as an intermediary with the explicit expectation that its customers will access infringing streams transmitted by third-party sources. As there is no dispute that third-party sources infringe Plaintiffs' public performance right, the "direct acts of infringement" element is satisfied.

### 3. TickBox's Objective of Promoting and Inducing Infringement Is Clear

The evidence overwhelmingly demonstrates that TickBox is intentionally inducing infringement.

First, TickBox concedes that TickBox TV, *by design*, provides customers with a user-friendly interface and the means by which to obtain easy and immediate access to popular infringing content. TickBox provides this access by selecting and presenting its customers with the most popular "Themes," which it then *required* customers to download and install in order to use TickBox TV. Foster Decl. ¶¶ 15-23. TickBox baldly asserts there is no evidence that TickBox updates the "Themes" or offers technical support for the "Themes." (Opp. at 4.) But Prof. Foster clearly identifies how TickBox TV is designed to automatically check for software updates when turned on and how TickBox issued various software updates changing the available "Themes." Foster Decl. ¶¶ 37-39, 41-44. The evidence likewise shows that TickBox responded to customer inquiries on its Technical Support webpage about certain "Themes" "not returning searches for movies or shows," and instructed customers to "try" the "Wookie Theme." *Id.* ¶ 24, Fig. 11. Prior to the filing of this action, TickBox also offered instructional videos and answers to "Frequently Asked Questions" that walked customers through the process of using

-9-

illicit addons to access infringing movies still in theaters. Foster Decl. ¶¶ 24-30, 36-44; Mot. at Parts II.B, C.

Second, TickBox does not deny that its advertising and promotion of TickBox TV make clear that the purpose and function of TickBox TV is to make it easy and "effortless[]" for customers to stream as much high-quality infringing content as possible without having to pay for that content. (Mot. at 19.) Under *Grokster*, encouraging others to infringe via advertising is the "classic case" of inducing infringement. 545 U.S. at 935-36.

TickBox claims that its advertising is just as innocuous as advertisements by other device makers and distributors. (Opp. at 11.) The difference between the ads for Roku and Amazon Fire TV, on the one hand, and the TickBox advertising that Plaintiffs discussed, is night and day. (*Compare* Mot. at 1, 5, 10-13 *with* Goldstein Decl. ¶¶ 28-29.) Among other differences, only TickBox promises that, by using the TickBox TV for its intended purpose, customers will have "ABSOLUTELY FREE" access to content that they otherwise would have to pay for.

Third, TickBox asserts that *Grokster* is distinguishable because TickBox "does not profit if users access unauthorized content" and it does not "replace or compete" with a known infringer. (Opp. at 8.) This is inapposite. TickBox has *explicitly* encouraged its customers to purchase and use TickBox TV to infringe Plaintiffs' Copyrighted Works. The *Grokster* Court considered, first and foremost, evidence that the defendants had advertised and promoted their products as tools of infringement. 545 U.S. at 925-26 (describing profits and business model as evidence "[i]n addition to … evidence of express promotion, marketing, and intent to promote" infringement). As described above and in Plaintiffs' Motion, TickBox explicitly promoted, marketed, and advertised TickBox TV as a tool of mass infringement. Moreover, TickBox does profit from infringement. The express and advertised purpose of TickBox TV is to give customers access to popular infringing content "ABSOLUTELY FREE" once customers purchase the device.

-10-

TickBox contends that, unlike Grokster, it does not compete with known infringers, but instead "competes" with legitimate services. (Opp. at 8.) TickBox, of course, does compete with other distributors of similarly illicit devices. *See, e.g.*, *Netflix Studios, LLC v. Dragon Media Inc.*, No. 2:18-cv-00230-MWF-AS (C.D. Cal. 2018). The fact that TickBox also competes with—indeed, advertises itself as a replacement for—licensed content providers only amplifies the harm from its infringing conduct. *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 1114 F. Supp. 2d 896, 910-11 (N.D. Cal. 2000) ("[I]n choosing between the free Napster service and pay-per-download sites, consumers are likely to choose Napster."), *aff'd in relevant part*, 239 F.3d 1004 (9th Cir. 2001). TickBox "competes" with legitimate services by telling customers that they can access the same content available from legitimate distributors "ABSOLUTELY FREE" and that customers therefore "will find that you no longer need those subscriptions." Klaus Decl. Exs. A, E.

Fourth, TickBox concedes it has taken no steps to develop or implement mechanisms to diminish the infringing activity. *See Grokster*, 545 U.S. at 939. While this fact alone may not establish the requisite intent to induce infringement, it "corroborate[s]" the other evidence in the record that TickBox intentionally induces infringement. *Fung*, 710 F.3d at 1036. TickBox relies on a disclaimer on the bottom of its webpage—this time in microscopic font rather than all-capitals—that informs customers that they should not use TickBox TV "for illegal purposes." (Opp. at 9.) This self-serving disclaimer means little given TickBox's explicit encouragement and instructions to customers on how to access infringing content. "[A]ctions speak louder than words," and TickBox's "lip service" to the copyright laws cannot defeat the clear evidence of TickBox's intent to induce and foster copyright infringement. *Usenet.com*, 633 F. Supp. 2d at 153, n.20.

### 4. TickBox Causes Infringement

TickBox is responsible for its conduct in inducing and promoting the use of TickBox TV for infringing activity. Under *Grokster*, the "culpable act is not merely

-11-

the encouragement of infringement but also the distribution of the tool intended for infringing use." *Grokster*, 545 U.S. at 940, n.13. TickBox promotes and distributes TickBox TV for infringing use, and its customers use TickBox TV in precisely the manner that TickBox intends: to access infringing streams from unauthorized third-party sources. TickBox's argument that the customers' installation of the Themes and their reliance on infringing third-party websites ignores *Grokster*. There, the Court held that inducing conduct is itself actionable. *Id.* at 937-41. TickBox purposefully serves as an intermediary between its customers and an infringing ecosystem where third-party sources offer and transmit infringing streams to the public. TickBox's conduct very much causes infringement.

### C. TickBox Is Causing Irreparable Harm to Plaintiffs

Beyond legally erroneous assertions that Plaintiffs have failed to show that TickBox customers infringe Plaintiffs' Copyrighted Works, *see* Part II.B.2 *supra*, TickBox does not dispute that unauthorized streaming causes Plaintiffs' irreparable harm that can only be remedied by injunctive relief.

TickBox's past and ongoing inducement of unauthorized streaming deprives Plaintiffs of their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works. As described in Part II.A *supra*, TickBox TV customers still can access unauthorized streams of Plaintiffs' Copyrighted Works by means of the same "Themes" that TickBox encouraged its customers to download and use. This unauthorized streaming infringes Plaintiffs' exclusive rights, causes irreparable harm to the legitimate market for online streaming of Plaintiffs' Copyrighted Works, and threatens Plaintiffs' relationships and goodwill with authorized licensees. (Mot. at 21-22.) Courts have found such harms sufficient to justify injunctive relief. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017).

TickBox asserts that Plaintiffs' claimed harms are speculative (Opp. at 13), but courts consistently find these harms to be sufficient. *See, e.g.*, *Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 975-76 (C.D. Cal. 2016).

TickBox does not and cannot claim that money damages will be sufficient to compensate Plaintiffs for these harms, or that TickBox will be able to satisfy the ultimate damages award in this case. (Mot. at 23.)

TickBox also suggests that the fact Plaintiffs did not file this Motion with their Complaint (they filed it less than 60 days later) indicates a lack of harm. That is simply wrong. "[C]ourts are loath to withhold relief solely because of delay, which is not particularly probative in the context of ongoing, worsening injuries." *VidAngel*, 869 F.3d at 866 (quotation omitted). TickBox itself has boasted that its popularity is "growing by leaps and bounds." *See VidAngel*, 224 F. Supp. 3d at 976; Klaus Decl. ¶ 8; Mot. at 13-14.

### D. The Balance of Hardships Strongly Favors Plaintiffs

TickBox claims that an injunction prohibiting it from directly infringing or inducing infringement would "entirely destroy Defendant as an enterprise," but that is a function of TickBox's intentional decision to build its business on a foundation of infringement. It is a "long-settled principle that harm caused by illegal conduct does not merit significant equitable protection." *VidAngel*, 869 F.3d at 867; Mot. at 24. On the other hand, if TickBox is sincere in its claims that it has no interest in distributing a product that its customers will use to infringe Plaintiffs' rights, then there is no hardship in requiring TickBox to stop distributing TickBox TV with software that facilitates infringement, including "Themes" that feature illicit addons.

TickBox's assertion that the proposed injunction is vague and overly broad also lacks merit. (Opp. at 11-13.) The proposed injunction is narrowly tailored to address TickBox's culpable conduct: inducing the infringement of Plaintiffs' Copyrighted Works. Courts have used similar language enjoining defendants from engaging in copyright infringement. *See, e.g.*, *VidAngel*, 224 F. Supp. 3d at 979

-13-

(enjoining "Defendants, as well as their officers, employees, attorneys, and those acting in concert with them" from "infringing by any means, direct or indirectly, Plaintiffs' exclusive rights under § 106"); *Fox TV Stations, Inc. v. FilmOn X LLC*, No. 13-cv-00758-RMC, Dkt. No. 34 (enjoining "Defendants, and all of their parents, subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice" from "streaming, transmitting, retransmitting, or otherwise publicly performing, displaying, or distributing any Copyrighted Programming"). The injunction would not prevent TickBox or anyone else from accessing *authorized* content.[3]

      Under 17 U.S.C. § 503(a) and (b), the Court has the authority to impound infringing articles and devices, and "[i]mpoundment of items … is appropriate if plaintiff[s] …. demonstrate[] a likelihood of success on the merits." *U2 Home Entm't, Inc. v. Bowery Music City, Inc.*, No. 03 Civ. 8909(RJH), 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8, 2003). TickBox has demonstrated it has no interest in ending its customers' continued and ongoing infringing activity. Impoundment of devices still in TickBox's control is appropriate to prevent TickBox from inflicting even more irreparable harm on Plaintiffs. (Mot. at 21-23.)

      TickBox offers no evidence that it cannot, with ease, implement a software update or otherwise remotely change the TickBox TV interface to remove customers' easy access to the "Themes" and corresponding illicit addons that TickBox encouraged, if not required, its customers to download and install on TickBox TVs. TickBox asserts that the requested injunctive relief would "require Defendant to hack into and delete content which its customers have downloaded to the Box," (Opp. at 12-13), but the injunction asks for nothing more than what

---

[3] Nor is TickBox's concern that it cannot engage in *authorized* uses of Plaintiffs' Copyrighted Works a reason to deny Plaintiffs' Motion. Though the proposed injunction clearly only prohibits infringing conduct, e.g., unauthorized uses, this Court may also amend the proposed language to address TickBox's concern.

TickBox has already demonstrated it can do: remotely update customers' TickBox TV devices to change the menus and options that its customers view on their TickBox TVs. The proposed injunction would merely obligate TickBox to make good on its halfhearted and ineffective efforts to do what it claims to have already done: remove Kodi builds with illicit addons from TickBox TV. As demonstrated by TickBox's own, repeated software updates since the filing of Plaintiffs' Complaint, TickBox has the means and ability to easily and remotely change what options users see and can access on their TickBox TVs. If, as Prof. Foster infers, TickBox utilizes Appy, a service which allows TickBox to conduct its remote management of customers' TickBox TVs, then TickBox has the technical ability to "change everything about [TickBox TV's] interface and functionality remotely." Foster Reply Decl. ¶ 10.

### E. Enjoining TickBox Will Further the Public Interest

TickBox has not and cannot dispute that enjoining its infringing activities would further the public interest. (Mot. at 24.) This factor plainly weighs in favor of injunctive relief. *VidAngel*, 869 F.3d at 867 (describing "compelling" public interest in protecting copyright owners' rights).

## III. CONCLUSION

For the reasons stated, Plaintiffs respectfully request that the Court grant their motion.

DATED: January 12, 2018  MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
KELLY M. KLAUS
Attorneys for Plaintiffs