UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-7496-MWF (ASx)                **Date:  January 30, 2018**
Title:     Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

              Deputy Clerk:                      Court Reporter:
              Rita Sanchez                        Not Reported

              Attorneys Present for Plaintiff:    Attorneys Present for Defendant:
              None Present                        None Present

**Proceedings (In Chambers):**        ORDER RE: PLAINTIFFS' MOTION FOR
                                       PRELIMINARY INJUNCTION [28]

        Before the Court is a Motion for Preliminary Injunction (the "Motion") filed by Plaintiffs Universal City Studios Productions LLLP ("Universal"), Columbia Pictures Industries, Inc. ("Columbia"), Disney Enterprises, Inc. ("Disney"), Twentieth Century Fox Film Corporation ("Fox"), Paramount Pictures Corporation ("Paramount"), Warner Bros. Entertainment, Inc. ("Warner Bros."), Amazon Content Services, LLC ("Amazon"), and Netflix Studios, LLC ("Netflix"), filed on December 7, 2017. (Docket No. 28).  On December 28, 2017, Defendant TickBox TV LLC ("TickBox") filed an Opposition.  (Docket No. 34).  On January 12, 2018, Plaintiffs filed a Reply. (Docket No. 37).

        The Court has read and considered the papers filed in connection with the Motion, and held a hearing on **January 29, 2018**.

        For the reasons set forth below the Motion is **GRANTED**.  **IT IS ORDERED** that a preliminary injunction maintaining the status quo – *i.e.*, compelling TickBox to maintain the current iteration of the Device's user interface, which seemingly no longer contains links to the themes and addons that Plaintiffs have specifically flagged as problematic in their Complaint and Motion papers (*e.g.*, Paradox, Lodi Black, and Covenant) – shall issue immediately.

        During the hearing, the Court posed several questions to counsel that go to the propriety and feasibility of issuing a preliminary injunction that goes beyond requiring

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-7496-MWF (ASx)          **Date:  January 30, 2018**
**Title:**      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

TickBox to maintain the changes to the Device's user interface that it has already implemented.  Specifically:

- What themes, if any, appear on the Device's current user interface (*i.e.*, on the home screen or on the screens that appear upon clicking any of the tiles on the home screen)?

- If themes do remain, do they contain links to the Covenant addon or any other addons that provide access to unauthorized streaming versions of Plaintiffs' copyrighted works?

- Plaintiffs request that the Court direct TickBox to perform a software update that removes from every already-distributed Device all "themes," "builds" or "addons" that facilitate unauthorized public performances of Plaintiffs' copyrighted works, including Spinz, Lodi Black, Stream on Fire, Wookie, Aqua, CMM, Spanish Quasar, Paradox, Covenant, Elysium, UK Turk, Gurzil, Maverick, and Poseidon.  Have Plaintiffs tested each of these themes and/or addons?  Does each one of them provide access to unauthorized versions of Plaintiffs' copyrighted works?

- What is the best way to address the issue of themes (such as Paradox or Lodi Black) and/or addons (such as Covenant) that provide access to unauthorized versions of Plaintiffs' copyrighted work but that Device users have already installed?  Is there a way to address this issue?  Plaintiffs frame the solution as a simple software update whereby TickBox removes these previously-downloaded themes from its customers' Devices.  TickBox suggests that, in order to remove previously downloaded themes or addons from its customers' Devices it would need to "hack into and delete content which its customers have downloaded," something that TickBox contends it "has no right to perform, and which could expose [it] to thousands of potential claims."  TickBox obviously has the right and the capability to perform generally applicable software

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:     Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

updates, as it did in October and December.  Is it possible to perform a similar software update whereby all Devices are reset, previously downloaded themes and addons are deleted, and TickBox's customers start anew with an offending-theme-free user interface?  Why would this expose TickBox to legal claims from its customers (particularly in light of the fact that it was done pursuant to court order)?

Keeping these questions and the discussion that follows in mind, counsel for Plaintiffs and TickBox, working with others who possess relevant technical expertise as necessary, shall negotiate and attempt to reach agreement upon a stipulated preliminary injunction that will supersede the Court's initial preliminary injunction order.  If counsel are able to reach an agreement, they shall file a stipulated preliminary injunction order by **February 7, 2018**.  In the event that counsel are unable to reach an agreement, Plaintiffs and TickBox shall each file a proposed preliminary injunction order along with a memorandum of law, not to exceed seven pages, explaining their positions by **February 12, 2018**.

I.     **BACKGROUND**

The following facts are alleged in the Complaint or included in declarations filed by the parties in connection with the Motion.

A.     **Plaintiffs and their Copyrighted Works**

Plaintiffs and their affiliates create and distribute motion pictures and television programs and own or control the copyrights relating to those motion pictures and television programs.  (Complaint ¶¶ 4-12, 19-20, Ex. A).  Some of Plaintiffs' recent titles include *Despicable Me 3* (Universal), *Spiderman: Homecoming* (Columbia), *Pete's Dragon* (Disney), *War for the Planet of the Apes* (Fox), *Zoolander 2* (Paramount), *Dunkirk* (Warner Bros.), *Mozart in the Jungle* (Amazon), and *Stranger Things* (Netflix).  (*Id.*, Ex. A).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)              Date:  January 30, 2018
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

Plaintiffs or their affiliates own or have the exclusive U.S. rights to reproduce, distribute, and publicly perform their copyrighted works, including by means of streaming those works over the internet.  (*Id.* ¶ 21).  Plaintiffs authorize the distribution and public performance of their copyrighted works in various formats and through multiple distribution channels, including, for example: (1) for exhibition in theaters; (2) through cable and satellite television services; (3) through authorized internet video-on-demand services, including those operated by iTunes, Google Play, Hulu, VUDU, Netflix, and Amazon (affiliates of Plaintiffs Netflix and Amazon); (4) on DVDs and Blu-ray discs; and (5) for broadcast on television.  (*Id.* ¶ 22).

Plaintiffs have not authorized TickBox, the operators of third-party sites to which the TickBox TV device (the "Device") connects, or TickBox's customers, to exercise any of Plaintiffs' rights under the Copyright Act, 17 U.S.C. § 106.  (*Id.* ¶ 23).

### B.      TickBox and its Device

TickBox is a Georgia limited liability company that sells the relevant Device and operates an eponymous website (www.tickboxtv.com), on which it promotes and sells the Device and offers "live chat" technical support.  (Complaint ¶¶ 13, 15; Declaration of Amy Bruckman in Opposition to Plaintiff's Motion for Preliminary Injunction ("Bruckman Decl.") ¶¶ 3, 6; Declaration of Jeffrey Goldstein in Opposition to Plaintiff's Motion for Preliminary Injunction ("Goldstein Decl.") ¶¶ 5-6).

The Device allows users to perform many of the functions of a computer or tablet on their television set or other monitor, including browsing the internet and streaming media content through applications.  (Goldstein Decl. ¶ 6).  The Device is a small computer that operates on the Android system.  (Bruckman Decl. ¶ 6; Declaration of Prof. Ian Foster in Support of Plaintiffs' Motion for Preliminary Injunction ("Foster Decl.") ¶ 9).  The hardware within the Device is comprised of the type of components found in most home computers, including a 64 Bit CPU, Quad Core processer, eight gigabytes of storage, one gigabyte of SDRAM, a graphics card, and hardware allowing users to connect to the internet.  (*Id.* ¶ 7).  Below is a picture of the Device:

---

**CIVIL MINUTES—GENERAL**                                                          **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 17-7496-MWF (ASx)**                **Date:  January 30, 2018**
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(Foster Decl. ¶ 9, Fig. 1).

As shown in the picture, the Device has various ports for connecting to other devices and a power source, including an HDMI port, an Ethernet port, and multiple USB ports.  (*Id.* ¶¶ 9-10).  The Device connects to a television through the HDMI port and to the internet through either the Ethernet port or wirelessly over a Wi-Fi network, as represented in the picture below:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018
Title:        Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

(*Id*. ¶¶ 9-10, Fig. 2).

### C.    Pre-Lawsuit User Experience

The following is a description of what a Device-user would have experienced prior to Plaintiffs' commencement of this action.  As discussed below, TickBox has made some changes to its user interface following receipt of the Complaint and the Motion.

Upon connecting the Device to a television and the internet, a user is prompted by on-screen pictures and messages directing her to download and install software that will ultimately allow the user to view online content on their television screen via the Device.  (*Id*. ¶¶ 12-16).  Once the relevant software is installed, upon turning on the Device and the television, a user will see a TickBox home page where he may choose among eight clickable options: (1) Welcome to TickBox TV; (2) WATCH MOVIES TV SPORTS; (3) Select your Theme; (4) Android Apps; (5) Live TV; (6) Settings; (7) OneClick Webinar; and (8) Support.  (*Id*. ¶ 16).  Below is a picture of the TickBox homepage:



---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)              Date:  January 30, 2018**
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

(*Id.*, Fig. 7).

When a user selects the "WATCH MOVIES TV SPORTS" option for the first time, he receives a message to "Please close this window and install a theme or select IPTV Premium"; the only option is to close the screen and return to the TickBox TV home page.  (*Id.* ¶ 17).  Back at the home page, the user can click on the "Select your Theme" option.  In this context, "theme" refers to a customized version of software known a "Kodi."  (*Id.* ¶ 18).

Kodi is media-player software that organizes, stores, and plays video files.  Kodi is "open-source," which means that its creators have published its source code so that third-party programmers can modify it and create their own versions.  Kodi also supports third-party programs called "addons," which are designed to run in conjunction with Kodi and provide supplemental features.  (*Id.*).  Anyone with the requisite skill and knowledge can create addons for Kodi, and there are hundreds of addons available, many of which allow a user to search through catalogs of video content available online and stream films and television shows.  (*Id.*; Bruckman Decl. ¶¶ 9-10).

When a user clicks the "Select your Theme" option, a screen offering several Kodi "themes" (also referred to interchangeably as "builds") appears.  (Foster Decl. ¶ 20).  The various Kodi themes differ in their look and feel.  (*Id.* ¶ 19).  The preloaded Kodi theme options include "Spinz," "Stream on Fire," "Wookie," "Paradox," "Lodi," "Aqua," "CMM," and "Spanish Quasar," as depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-7496-MWF (ASx)                    **Date:  January 30, 2018**
**Title:**      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(*Id.* ¶ 20, Fig. 9).

Each of these themes contain a bundle of Kodi addons, including "streaming" addons that provide users with lists of film and television titles and allow users to attempt to access selected titles from various internet-linked sources.  When a streaming addon finds a working source for a desired title, the addon facilitates the transmission of a stream from the remote content source to the Device.  When a working source is located, the user must agree to a general disclaimer absolving the "author" (seemingly the "theme" creator) of any responsibility for the content or reliability of the addon, as depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018**
Title:        Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(*Id.* ¶ 21, Fig. 10).  Clicking "I AGREE" results in the automatic downloading and
installation of the selected theme (or build), and the Device then prompts the user to
"launch the build" – *i.e.*, run the selected customized (by a third party) version of Kodi.
(*Id.* ¶¶ 22-23).  Once the selected theme is installed, clicking the "WATCH MOVIES
TV SPORTS" title on the home screen will launch the installed theme.  (*Id.* ¶ 23).  A
user may install a different theme through this same process at any time.  (*Id.* ¶ 29).

### D.        Accessing Infringing Content with TickBox's Device

Device users are able to access unauthorized versions of copyrighted content
through their selected themes.  For example, Professor Foster installed the "Paradox"
theme (mentioned above) for the purposes of this case.  (*Id.* ¶ 25).  The Paradox home
screen presents different categories of content, including "TV," "TV SHOWS,"
"MOVIES," and "KIDS," as depicted below:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)            Date:  January 30, 2018**
**Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC**



(*Id.* ¶ 25, Fig. 12).  When a user selects one of the content categories, for example "TV SHOWS," a list of installed streaming addons that provide access to that category is shown at the bottom of the screen.  In the picture above, the featured addons are "Elysium," "UK Turk," "Maverick," "Gurzil," "Covenant," and "Poseidon."  These addons allow a user to access film and television content available at disparate internet locations.  They allow a user to search for specific titles or to browse by other criteria, such as genre or films currently in theaters.  They compile lists of sources for a selected title, and allow the user to select a source.  If the selected source is unavailable, the addon automatically tries others.  The addon plays the selected content within the Kodi theme environment (in this case Paradox), allowing the user to control the content (*e.g.,* pause, rewind, fast-forward) within his selected theme.  (*Id.* ¶ 26).

A user who selects the "Covenant" addon would be presented with a menu offering, among other things, "Movies," "TV Shows," and "Search."  (*Id.* ¶ 30).  If the user selects "Movies," he will be brought to another screen that presents different

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018**
**Title:        Universal City Studios Productions LLLP, et al. v. TickBox TV LLC**

categories of movies, such as "Most Popular," "Box Office," and "In Theaters," as depicted below:



(*Id.* ¶ 30, Fig. 13).  When a user selects a category, he will be presented with a list of movies that fall within the particular category.  (*Id.* ¶ 31).

For example, on November 22, 2017, Professor Foster selected the "In Theaters" category and accessed a list of recently released movie titles (along with year of release and running time) that were still (at least in an authorized manner) being shown exclusively in theaters, as depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-7496-MWF (ASx)                **Date:**  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(*Id.* ¶ 31, Fig. 14).

Once the user clicks on a title, he is informed that Covenant is searching for "providers" of that particular title, and then is shown how many sources have been located and their quality.  For example, Professor Foster clicked on Fox's *Murder on the Orient Express*, and Covenant located versions of the film in varying quality (*e.g.,* 4K, 1080p, 720p, and standard definition), from 179 sources, as depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(*Id.* ¶ 32, Fig. 15).  Once the compilation process (which generally takes less than a minute) is complete, the user receives a list of providers from which to stream the selected title along with information about the quality of each version.  (*Id.* ¶¶ 32, 34).  If the first entry a user selects does not work, Covenant will automatically try other options until it locates a functional version.  (*Id.* ¶ 34).  Once a functional link is located, Covenant will play the selected title within the pre-installed theme environment (in this case, Paradox).  (*Id.* ¶ 35).

Professor Foster was also able to access copyrighted content through themes other than Paradox.  For example, he installed the Lodi Black theme and utilized the Covenant addon within it to browse titles of movies that were otherwise only in the theaters at that time, including *Murder on the Orient Express*.  (*Id.* ¶ 36).  While the look and feel of the Covenant addon is different within the Lodi Black theme than in the Paradox theme, it is functionally the same.  (*Id.* ¶ 36).  A screen shot of the Covenant "In Theaters" screen within the Lodi Black theme is depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(*Id.*, Fig. 17).

### E.      **TickBox's Advertising and Customer Support**

Plaintiffs have compiled a variety of TickBox advertising and promotional material and support-related communications with Device users to bolster their argument that TickBox has actively encouraged copyright infringement.

***Advertising.***  TickBox has advertised its Device as a way to "cut the cord" if "you're sick of paying high monthly fees and expensive bills for your regular cable … and premium cable channels like HBO and SHOWTIME… [o]r if you're tired of wasting money with online streaming services like Netflix, Hulu, or Amazon Prime…" (Complaint ¶ 1; Declaration of Kelly M. Klaus in Support of Plaintiffs' Motion for Preliminary Injunction ("Klaus Decl."), Ex. A).  In the same advertisement, it directed prospective customers to "[s]imply plug the Tickbox TV [the Device] into your current television and enjoy unlimited access to ALL the hottest TV shows, Hollywood blockbusters and LIVE sporting events in one convenient little device … ABSOLUTELY FREE."  (Complaint ¶ 1; Klaus Decl., Ex. A).  That advertisement is depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)**               **Date:  January 30, 2018**
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC




(Klaus Decl. Ex. A).

TickBox has advertised that its Device "searches the internet where it will locate and stream … virtually any television show [or] [H]ollywood movie … without you having to worry about paying rental fees or monthly subscriptions."  (Complaint ¶ 25; Klaus Decl., Ex. B).  That advertisement is depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-7496-MWF (ASx)                  **Date:  January 30, 2018**
**Title:**       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(Klaus Decl., Ex. B)

Prior to this lawsuit, TickBox's home page referred to the Device as a means to "Get Instant Access to Any Movie, TV Show, or Sporting Events… Without Signing a Contract or Paying a Monthly Service Fee!"  (Complaint ¶ 42; Klaus Decl. Ex. C). That advertisement is depicted below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)**                    **Date:  January 30, 2018**
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC



(Klaus Decl., Ex. C).

   *Customer support.*  TickBox's website and its Device home page contain links
for technical and other customer support, which provide information that would assist
an untrained user in accessing unauthorized copyrighted material.  (Complaint ¶ 29;
Klaus Decl. ¶ 5, Ex. D).  For example TickBox's website contains a "How to search
for a Movie" instructional video, in which TickBox urges users to utilize the "Select
Your Theme" option on the Device's home page.  (Complaint ¶¶ 30, 31; Klaus Decl. ¶
5, Ex. D).

   TickBox advises customers when certain themes are not functioning well and
recommends other themes.  For example, a TickBox support message that Professor
Foster located said that TickBox had "noticed that a few of the themes are not
returning searches for movies or shows," but that TickBox has "had good experience
with the Wookie Theme at this time."  (Foster Decl. ¶ 24, Fig. 11).

   TickBox's website also has a "Frequently Asked Questions" page.  (Klaus Decl.
Ex. E).  On that page, TickBox advises customers that they may "of course" "still [use]
Amazon Video, Netflix or Hulu on" the Device, but that "within a few days of using

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)               Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

[the Device] you will find you no longer need those subscriptions." (*Id.*).  On another
question-and-answer page, TickBox advises customers that they "can see almost every
movie and TV series ever made" and "can even access movies and shows that are still
on Demand and episodes of TV that were just aired," and "will never need to pay to
watch any of them." (*Id.*, Ex. F).

### F.    **TickBox's Post-Lawsuit Modifications**

In October 2017, following Plaintiffs' commencement of this action, TickBox
altered some aspects of the Device's user interface and of its advertising.  As to
advertising, the TickBox website homepage no longer refers to the Device as a means
to "Get Instant Access to Any Movie, TV Show, or Sporting Events… Without
Signing a Contract or Paying a Monthly Service Fee!" (Klaus Decl. ¶ 8).  The
homepage now says: "[T]urn your TV into a content filled home theatre system
enjoying thousands of movies, TV shows and apps like Youtube, HBO Now and many
many more…" (*Id.*).  The website still says that "Tickbox TV can search the entire
internet where it can locate and stream any television show, movie, sporting event,
music or game that is available for you to watch." (*Id.*).

As to the Device's user interface, in October 2017, TickBox relabeled the
"Select your Theme" option as "Select Streaming Channels." (Goldstein Decl. ¶ 22).
When users click on the "Select Streaming Channels" option, they are now presented
with options to download apps from mainstream media companies such as ESPN and
A&E, in addition to various "themes" (and thereby addons). (*Id.* ¶¶ 23-24).  Following
the filing of the Complaint, certain themes that provided access to the Covenant addon
were still available. (Foster Decl. ¶¶ 44-46).  In December 2017, following Plaintiffs'
filing of this Motion, TickBox issued a second software update pursuant to which
"links to the remaining offending 'Themes'" were removed. (Goldstein Decl. ¶ 26).

Professor Foster utilized the Device again on January 4, 2018.  (Reply
Declaration of Prof. Ian Foster in Support of Plaintiffs' Motion for Preliminary
Injunction ("Foster Reply Decl.") ¶ 17).  When he powered the Device on, it
automatically performed the software update that TickBox had issued in December in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)**               **Date:  January 30, 2018**
**Title:**      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

response to the Motion.  (*Id.*).  After the update was complete, the home screen was revised so that the "My Apps & Addons" tile was renamed "My Apps," and the "Settings" tile was replaced with a Kodi icon tile, as depicted below:



(*Id.* ¶ 18, Fig. 3).  Additionally, the "Lodi Black" theme was no longer listed within the "Select Streaming Channels" option.  (*Id.* ¶ 18).  Professor Foster was still able to access his previously-downloaded Paradox theme and the Covenant addon within it (and all of the movies within Covenant, including *Murder on the Orient Express*) by clicking on the "Media Player" tile on the home screen.  (*Id.* ¶ 19).

## II.      DISCUSSION

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions, and courts apply the same standards to both.  *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  In order to prevail on its Motion, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in their favor; and (4) an injunction is in the public interest.  *Toyo Tire Holdings of Ams. Inc. v. Cont'l*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

*Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).

Plaintiffs must "make a showing on all four prongs."  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit employs the "serious questions" version of the "sliding scale" approach when applying the four-element *Winter* test.  *Id.* at 1134.  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

A.      **Likelihood of Success on the Merits**

Plaintiffs allege that TickBox is liable for intentionally inducing the infringement of Plaintiffs' copyrighted works and contributory copyright infringement. (*See* Complaint ¶¶ 46-65).

In order to prevail on their copyright infringement claims, Plaintiffs will need to demonstrate two basic things: (1) "ownership of the allegedly infringed material"; and (2) violation of "at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Plaintiffs have demonstrated that they own the allegedly infringed material. (*See* Complaint Ex. A; Klaus Decl. Exs. G-PP).  TickBox does not dispute the issue of ownership.

Plaintiffs rely primarily on two cases to support their argument that Defendants are liable for the infringement of their exclusive rights under an inducement / contributory infringement theory: *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), and *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020 (2013).

In *Grokster*, the Supreme Court held that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)                 Date:  January 30, 2018**
**Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC**

affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 936-37.

In *Fung*, the Ninth Circuit analyzed *Grokster* and held that a defendant may be held liable for copyright infringement under *Grokster*'s inducement theory where four elements are present: "(1) the distribution of a device or product [by the defendant], (2) acts of infringement [by third parties], (3) an object [of the defendant] of promoting [the device's or product's] use to infringe copyright, and (4) causation. *Fung*, 710 F.3d at 1032.

### 1.      Distribution of a device or product

In *Fung*, the Ninth Circuit explained that one may be liable for copyright infringement under the *Grokster* inducement theory if he distributes a physical device or product that is utilized for copyright infringement or if he provides a service that facilitates copyright infringement. *Id.* at 1033 ("one can infringe a copyright through culpable actions resulting in the impermissible reproduction of copyrighted expression, whether those actions involve making available a device or product or providing some service used in accomplishing the infringement").

There is no doubt that TickBox's distribution of the Device satisfies this first prong of the *Fung* test.  TickBox acknowledges as much.  (*See* Opp. at 3.)

### 2.      Acts of infringement

Plaintiffs argue that TickBox and its Device facilitate the infringement of Plaintiffs' exclusive rights "to perform" their copyrighted movies and television shows "publicly" pursuant to 17 U.S.C. § 106(4).  (Mot. at 17).  TickBox argues that: (1) it is not the Device that facilitates infringement, but third-party themes over which TickBox exercises no control; (2) Plaintiffs produced no evidence that anyone apart from Plaintiffs' expert has utilized the Device to access Plaintiffs' copyrighted movies and television shows; and (2) even if Device users have in fact utilized the Device to view Plaintiffs' copyrighted movies and television shows, the mere viewing of streaming

---

**CIVIL MINUTES—GENERAL                                              21**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

content does not infringe upon Plaintiffs' public performance rights.  (*See* Opp. at 5-7).
The Court is not persuaded by TickBox's arguments.

    ***Third-party themes*.**  TickBox argues that it simply "offers a computer, onto
which users can voluntarily install legitimate or illegitimate software" and that the
"product about which Plaintiffs complain is third-party software which can be
downloaded onto a myriad of devices, and which [TickBox] neither created nor
supplies."  (Opp. at 5).  In *Sony Corp. of America v. Universal City Studios, Inc.*, 464
U.S. 417 (1984), the Supreme Court addressed the question of whether Sony may be
held secondarily liable for copyright infringement as a result of its distribution of the
Betamax (the competitor to the VCR, when VCRs were first on the market), which
consumers could utilize to record copyrighted television programs.  464 U.S. at 423-
24.  Looking to patent law's "staple article of commerce" doctrine, under which
distribution of a component of a patented device will not violate the patent if it is
suitable for use in other ways, the Court held that Sony could not be liable solely on
the basis of distribution because the Betamax was "capable of commercially significant
noninfringing uses."  *Id.* at 442.  In *Grokster*, the Court held that "where evidence goes
beyond a product's characteristics or the knowledge that it may be put to infringing
uses, and shows statements or actions directed to promoting infringement, *Sony*'s
staple-article rule will not preclude liability."  *Grokster*, 545 U.S. at 935.  Thus, the
fact that the Device is just a "computer" that can be used for infringing and
noninfringing purposes does not insulate TickBox from liability if (as discussed further
below) the Device is actually used for infringing purposes and TickBox encourages
such use.

    TickBox also emphasizes that the themes through which Device users are able to
access (via addons such as Covenant) copyrighted content "are not the [Device], and
… have absolutely nothing to do with Defendant."  (Opp. at 3).  But the evidentiary
record establishes that, at least prior to Plaintiffs' filing of the Motion, TickBox pre-
loaded the Device with third-party themes that provided easy access to copyrighted
content and actually directed Device users to "install a theme" in order to gain access
to the (since renamed) "WATCH MOVIES TV SPORTS" option on the home screen.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

TickBox has also instructed its customers to try the "Wookie Theme" when other themes were not functioning well.  In short, TickBox's behavior was hardly passive with respect to the themes.

    ***Evidence of Device users' access to Plaintiffs' content.***  "To prove copyright infringement on an inducement theory, [a plaintiff must] adduce 'evidence of actual infringement' by users" of the defendant's device.  *Fung*, 710 F.3d at 1034 (quoting *Grokster*, 545 U.S. at 940).  Professor Foster's repeated access to Plaintiffs' copyrighted content via the Device is sufficient evidence of actual access to that content by Device users.  *See Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936 (KMW), 2011 WL 1641978, at *8 (S.D.N.Y. Apr. 29, 2011) ("Courts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work.") (collecting cases); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 n. 16 (S.D.N.Y. 2009) ("Defendants' argument that these downloads are not proof of unauthorized copying because Plaintiffs had 'authorized' the downloads by their investigators is without merit.  Courts routinely base findings of infringement on the actions of plaintiffs' investigators.") (collecting cases).  Moreover, TickBox's CEO, Mr. Goldstein, stated that "[i]f a user of [the Device] were to access unauthorized content, TickBox … would not have any way of knowing about such use…"  (Goldstein Decl. ¶ 21).  If TickBox itself does not know what content Device users have accessed, it is not clear how Plaintiffs might go about gathering such evidence at this early stage of the action.  The Court thus rejects TickBox's argument that Plaintiffs have failed to produce evidence of Device users' access to Plaintiffs' content.

    ***Infringement of Plaintiffs' public performance right.***  Broadcasting copyrighted video content to the public over the internet without authorization infringes upon the copyright owner's public performance right.  *See, e.g., American Broadcasting Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2509-10 (2014) (streaming television programming to subscribers over the internet violated program owners' public performance rights); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 278-79 (2d Cir. 2012) (same).  TickBox does not dispute this, but argues that it is third parties (*i.e.*,

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

the creators of addons, such as Covenant, and/or the those who operate the disparate streaming video sources that the addons access) who are violating Plaintiffs' public performance rights by broadcasting streaming versions of Plaintiffs' content to the public, not Device users who are merely *viewing* that streaming content.  (*See* Opp. at 5-7).  Citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), TickBox contends that "merely viewing copyrighted material online, without downloading, copying, or retransmitting such material, is not actionable."  (Opp. at 7).

In *Perfect 10*, the district court had preliminarily enjoined Google (one of the multiple defendants) from creating and publicly displaying thumbnail versions of the plaintiff's copyrighted pictures of nude models, but did not enjoin Google from linking to third-party websites that displayed the plaintiff's pictures.  *See Perfect 10*, 508 F.3d at 1154.  The Ninth Circuit agreed with the district court's analysis that, because there was no evidence that individual Google users had downloaded (rather than simply viewed) the plaintiff's copyrighted photographs of nude models and because a computer's reproduction of those images by way of "cache" copies was fair use, the individual Google users (who viewed the images via Google's search engine) did not directly infringe the plaintiff's copyrights.  *See id.* at 1169-70.  But the Court disagreed with the district court's conclusion that Google could not be contributorily liable under *Grokster* on the basis of the assistance it provided to third-party websites to display the plaintiff's images and to Google users to access those websites.  *See id.* at 1172. "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available [through third-party websites] using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps."  *Id.*  Thus, while Google could not be held liable under a contributory infringement theory based solely upon its individual users viewing (but not downloading) Perfect 10's images, it could be held liable based on the fact that its users were accessing those images through links on Google's search engine to third-party websites that were directly infringing Perfect 10's rights under the Copyright Act by displaying its images.  *See id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 17-7496-MWF (ASx)          Date: January 30, 2018
Title:     Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

    *Perfect 10* is thus instructive in this case, though not in the way that TickBox would like. Here, as in *Perfect 10*, the defendant provides a device or service that its customers utilize to access copyrighted content that is displayed or broadcasted by third parties without authorization. Here, as in *Perfect 10*, the actions of the defendant's customers (*i.e.,* viewing still images or motion pictures without downloading them), standing on their own, do not infringe upon any of the plaintiffs' exclusive rights under the Copyright Act. Here, as in *Perfect 10*, the defendant's device or service is funneling users to third parties that are directly infringing upon the plaintiffs' exclusive rights under the Copyright Act (*i.e.*, displaying copyrighted images or broadcasting copyrighted video content). *See id.* at 1172 ("There is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials."). Absent viewers, including Device users, the third-party streamers of video content would have no audience to broadcast unauthorized versions of Plaintiffs' (and others') copyrighted works to, and thus would not be infringing upon Plaintiffs' public performance rights. But there is an audience, and the Device (via the pre-installed themes and the addons within those themes), by aggregating various unauthorized sources of copyrighted work and simplifying the process of accessing that work, undoubtedly enlarges that audience and thereby enlarges the scope of the infringement. In sum, as with Google in *Perfect 10*, TickBox may be held contributorily liable under *Grokster* and *Fung* because it has served as the intermediary between third parties who directly infringe upon Plaintiffs' public performance rights and its customers, who become a necessary component of the infringement (*i.e.*, the audience).

    In sum, the "acts of infringement" prong of the *Fung* test has been established.

### 3.     An object of promoting the device's use to infringe copyright

    "The third, usually dispositive, requirement for inducement liability is that the 'device' or service be distributed 'with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement.'" *Fung*, 710 F.3d at 1034 (quoting *Grokster*, 545 U.S. at 936-37).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

"[J]ust as *Sony* did not find intentional inducement despite the knowledge of the [Betamax] manufacturer that its device could be used to infringe …, mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability."  *Grokster*, 545 U.S. at 937.

*Advertisements*.  "The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations."  *Id.*  There is ample evidence that, at least prior to Plaintiffs' commencement of this action, TickBox explicitly advertised the Device as a means to accessing unauthorized versions of copyrighted audiovisual content.  As discussed above:

- TickBox advertised the Device as a way to "cut the cord" if "you're sick of paying high monthly fees and expensive bills for your regular cable … and premium channels like HBO and SHOWTIME … [o]r if you're tired of wasting money with online streaming services like Netflix, Hulu, or Amazon Prime…"

- TickBox advertised the Device as a way to "enjoy unlimited access to ALL the hottest TV shows, Hollywood blockbusters and LIVE sporting events in one convenient little device … ABSOLUTELY FREE."

- TickBox advertised that the Device "searches the internet where it will locate and stream … virtually any television show [or] [H]ollywood movie … without you having to worry about paying rental fees or monthly subscriptions."

- TickBox advertised the Device as a means to "Get Instant Access to Any Movie, TV Show, or Sporting Events … Without Signing a Contract or Paying a Monthly Service Fee."

TickBox argues that its situation is distinguishable from the defendant's in *Grokster* because, in that case, the defendant had advertised itself as a replacement for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)               Date:  January 30, 2018**
**Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC**

another illicit song-sharing service (Napster), whereas TickBox's "place in the market does not replace or compete with some known copyright infringe[r]; it competes with other streaming hardware services, including the 'Firestick' sold by affiliates of Plaintiff Amazon…"  (Opp. at 8).  The Court's analysis in *Grokster* did not turn on the type of competitor the defendant was trying to displace; it turned on whether the defendant advertised its product as a means of accessing infringing content.  *See Grokster*, 545 U.S. at 938 ("Grokster distributed an electronic newsletter containing links to articles promoting its software's ability to access popular copyrighted music.").  Here, TickBox advertised the Device as a means of accessing a trove of copyrighted content for "free."  Whether its aim was to take business away from other known infringers or legitimate video-streaming services is irrelevant.

    ***Customer support.***  Apart from advertising, a defendant may express its object of promoting infringement by issuing "communications that, while not *in haec verba* promoting infringing uses, provide[ ] information actively supporting such uses." *Fung*, 710 F.3d at 1035.  In *Grokster*, such communications included "responding affirmatively to requests for help in locating and playing copyrighted materials." *Grokster*, 545 U.S. at 938.

    As discussed above, at least prior to this lawsuit, TickBox affirmatively provided instructions to Device owners concerning how to effectively access copyrighted material via the pre-loaded themes:

- TickBox's website contained a "How to search for a Movie" instructional video, which urged users to utilize the "Select Your Theme" option on the home page.

- TickBox has advised customers to try other themes, such as the "Wookie Theme," when certain themes were not functioning well.

- On its "Frequently Asked Questions" page, TickBox advised customers that "within a few days of using [the Device] you will find that you no longer need those subscriptions [to Amazon Video, Netflix, or Hulu]."

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

*Lack of filtering mechanisms*.  While the failure to "develop filtering tools or other mechanisms to diminish the infringing activity" that a device otherwise enables does not, on its own support a finding of contributory infringement, it may, in the presence of other evidence, "underscore[ ] [a defendant's] intentional facilitation of [its] users' infringement."  *Grokster*, 545 U.S. at 939 n. 12.  TickBox does not dispute that the Device is devoid of any mechanisms to curb users' access to infringing content.  Given the presence of affirmative inducement-related activity, in the form of advertisements and customer support, the lack of any filtering mechanisms "underscores [TickBox's] intentional facilitation" of infringement.

*Infringement-related profits*.  In *Grokster*, the Court noted that the defendants "make money by selling advertising space," which was dependent on "high-volume use, which the record shows is infringing."  *Id.* at 940.  While evidence of infringement-related profits "alone would not justify an inference of unlawful intent, … viewed in the context of the entire record its import [was] clear."  *Id.*  TickBox argues that it "does not profit if its users access unauthorized content."  (Opp. at 8).  TickBox ignores the fact that many customers would presumably not have purchased the Device in the first place if they had not been convinced that they would be able to use it to access unauthorized content.  Accordingly, the fact that TickBox undoubtedly sold more Devices than it otherwise would have as a result of affirmatively advertising it as a means of accessing unauthorized content underscores TickBox's illicit intent.

In sum, given the evidence of advertising, customer support, the lack of filtering mechanisms, and infringement-related profits, the third prong of the *Fung* test is satisfied.

### 4.    Causation

In *Fung*, the Ninth Circuit explicitly discussed causation as necessary component of liability under the *Grokster* inducement theory where the Supreme Court in *Grokster* had not.  *See Fung*, 710 F.3d at 1037 ("*Grokster* … mentions causation only indirectly, by speaking of '*resulting* acts of infringement by third parties.'") (emphasis in original).  Faced with the parties' competing interpretations of what the

_____

CIVIL MINUTES—GENERAL                                                              28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-7496-MWF (ASx)               **Date:  January 30, 2018**
Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

*Grokster* Court meant by "resulting acts of infringement," the Ninth Circuit found the plaintiffs-appellees' broader interpretation that a plaintiff "need only prove that the 'acts of infringement by third parties' were caused by the product distributed or services provided [by defendants]" more compelling than the defendants-appellants narrower interpretation that "the infringement must be caused … by the inducing messages themselves." *Id.*

"[I]f one provides a service that could be used to infringe copyrights, with the manifested intent that the service actually be used in that manner, that person is liable for the infringement that occurs through the use of that service." *Id.*  In other words, "where there is sufficient evidence of fault – that is, an unlawful objective – distributors are liable for causing the infringement that resulted from use of their products." *Id.* at 1038.

There is sufficient evidence that the Device can be and is used to access infringing content, and there is sufficient evidence of TickBox's fault – primarily in the form of its advertisements and customer-support efforts.  While there are undoubtedly other avenues to access infringing content than the Device (via the pre-installed themes and addons), the Device is one such avenue, and one that is user friendly and requires no particular knowledge or effort.  TickBox obviously has not "caused" third parties to broadcast Plaintiffs' (or others') copyrighted works over the internet, at least in any direct sense.  But TickBox, through the Device, has delivered to those third parties viewers they would not otherwise have had, broadening those third parties' audiences and the scope of their infringement.  TickBox may be held responsible for the instances of infringement that would not have otherwise occurred in the absence of the Device.

In sum, the "causation" prong of *Fung* is satisfied, and Plaintiffs have thus established that they are likely to succeed on the merits of their *Grokster* / *Fung* inducement liability claim against TickBox.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 17-7496-MWF (ASx)            **Date:  January 30, 2018**
**Title:**      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

### B.      **Irreparable Harm**

"A preliminary injunction may issue only upon a showing that 'irreparable injury is *likely* in the absence of an injunction.'"  *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 865 (9th Cir. 2017) (quoting *Winter*, 555 U.S. at 22) (emphasis in original).  Plaintiffs argue that, in the absence of a preliminary injunction, they are likely to suffer the following types of irreparable harm: (1) deprivation of "their exclusive rights to control how, when, and to whom they will disseminate their Copyrighted Works"; (2) the undermining of "the legitimate market in which consumers can purchase access to these same works"; and (3) disruption of "Plaintiffs' relationships and goodwill with authorized licensees."  Apart from rehashing the merits-related arguments that Plaintiffs "have failed to show that [Device] users have actually downloaded such software [the themes and addons] or accessed Plaintiffs' copyrighted works, or that such access would infringe Plaintiffs' rights" (Opp. at 13), which the Court has already considered and rejected, TickBox does not contest Plaintiffs' arguments regarding irreparable harm.  Plaintiffs have made an ample showing that they are likely to suffer irreparable harm absent a preliminary injunction.

In support of their irreparable harm arguments, Plaintiffs have filed a declaration from David Kaplan, a senior vice president and intellectual property counsel at Plaintiff Warner Bros.  (Declaration of David P. Kaplan ("Kaplan Decl.")).  Mr. Kaplan explains that Warner Bros., like other movie studios, "utilizes a practice that is known as 'windowing'" whereby Warner Bros. makes its works "available through different distribution channels at different times following the initial theatrical release of a particular title," and "[d]istributors and licensees generally will pay more for the right to distribute or perform movies in an earlier window – when the content is new, or newer – than for comparable rights during later windows."  (Kaplan Decl. ¶ 8).  Beyond losing out on the compensation it would otherwise receive if Device users were forced to view authorized versions of Warner Bros. copyrighted work (rather than free, unauthorized versions), Mr. Kaplan explains TickBox (via the Device) interferes with Warner Bros.' windowing strategy and its relationships with distributors and licensees.  (*See id.* ¶¶ 14-21).  He explains:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 17-7496-MWF (ASx)              Date:  January 30, 2018**
**Title:       Universal City Studios Productions LLLP, et al. v. TickBox TV LLC**

> Because TickBox operates free from licensing restrictions, its
> distribution of TickBox TV [the Device] has the result of
> making our content available during windows occupied by
> different distribution channels or exclusivity periods held by
> authorized distributors or licensees.  For example, new
> releases are, following their theatrical release, first released
> to distributors that sell digital download copies or physical
> copies on DVDs or Blu-ray discs.  During these initial home
> entertainment release windows, Warner Bros.' movies
> generally are not available for VOD [video-on-demand]
> streaming.  TickBox TV, however, offers Defendant's
> customers access to numerous links to newly released titles
> without regard for these exclusive windows.  The effect of
> this is to interfere with and undermine Warner Bros.'
> contractual commitments to and relationships with its
> distributors and licensees, and to undermine Warner Bros.'
> negotiating position for future agreements with authorized
> distributors and licensees.

(*Id.* ¶ 18).

Mr. Kaplan also explains that TickBox threatens the entire market for authorized in-home video streaming:

> Defendant's [Device] poses a significant threat to the entire
> legitimate market for home entertainment, and in particular,
> for the online distribution market.  Defendants' [sic]
> unlicensed offering further threatens the development and
> growth of the legitimate on-demand streaming market
> because use of the device inculcates Defendant's customers
> to believe that high-speed and high-quality content can be
> accessed at no cost and with no advertisements.  This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

threatens the very foundation of Warner Bros.' business and
the businesses of its distributors and licensees.

(*Id.* ¶ 31).

Mr. Kaplan's declaration is uncontroverted and, at least as to the portions relied upon by the Court, persuasive.  Moreover, the harms he has cited – interference with relationships with distributors and licensees, and the undermining of the market and Warner Bros.' business model more generally – have been recognized as sufficiently irreparable to support the issuance of a preliminary injunction.  *See, e.g., VidAngel*, 869 F. 3d at 866 (affirming issuance of preliminary injunction where "[t]he district court had substantial evidence before it [in the form of an uncontested declaration] that VidAngel's service undermines the value of the Studios' copyrighted works, their 'windowing' business model, and their goodwill and negotiating leverage with licensees").

Additionally, it is unlikely that money damages could adequately compensate for difficult-to-quantify harms to Plaintiffs' business models and relationships.  TickBox does not argue otherwise.  *See id.* ("although VidAngel argues that damages could be calculated based on licensing fees, the district court did not abuse its discretion in concluding that the loss of goodwill, negotiating leverage, and non-monetary terms in the Studios' licenses cannot readily be remedied with damages").

Accordingly, Plaintiffs have established that they are likely to suffer irreparable harm absent a preliminary injunction.

### C.      Balance of the Equities and Public Interest

Before issuing a preliminary injunction, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:        Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

The harms that Plaintiffs are likely to suffer in the absence of a preliminary injunction – including the undermining of their business relationships and overall business models – are discussed above.  TickBox argues that the specific injunction that Plaintiffs propose would "shut down Defendant's business, impound all of Defendant's inventory, and require Defendant to hack into and delete content which its customers have downloaded to the [Device]…"  (Opp. at 12-13).

The Court will not issue an injunction that prohibits TickBox from distributing the Device entirely or that requires TickBox to "hack into" its customers' Devices. The Court is inclined, however, issue an injunction that: (1) prohibits TickBox from distributing any Device that is, in any manner, pre-loaded with any "themes" that, directly or indirectly, provide access to unauthorized versions of Plaintiffs' copyrighted works; and (2) requires TickBox to perform a software update (as it has done very recently) that removes all such "themes" from all Devices that TickBox has already distributed.

Assuming the Device is useful for purposes other than accessing infringing content, an injunction of this scope will not "shut down Defendant's business" as TickBox contends.  In the event that such an injunction does shut TickBox down, that will be indicative not of an unjustifiably burdensome injunction, but of a nonviable business model.  *See Warner Bros. Entertainment Inc. v. WTV Systems, Inc.*, 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011) ("Defendants 'cannot complain of the harm that will befall them when properly forced to desist from their infringing activities.") (quoting *Triad Systems Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995)) (alterations omitted).

Finally, the Court concludes that the issuance of an appropriately tailored preliminary injunction is in the public interest.  The Court's injunction will not prohibit TickBox from developing or distributing the Device; it will prohibit TickBox from distributing the Device in its current form – that is, preloaded with themes that provide easy access to unauthorized versions of Plaintiffs' copyrighted work.  To the extent the Device is useful for non-infringing purposes, the public will still enjoy access to it. "On the other hand …, 'the public has a compelling interest in protecting copyright

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 17-7496-MWF (ASx)                    Date:  January 30, 2018
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

owners' marketable rights to their work and the economic incentive to continue
creating television programming' and motion pictures."  *VidAngel*, 869 F.3d at 867
(quoting *WPIX*, 691 F.3d at 287).

A preliminary injunction is in the public interest, and the balance of hardships
between the parties supports the issuance of a preliminary injunction.  Accordingly, all
preconditions for the issuance of a preliminary injunction have been satisfied.

As noted at the outset, however, outstanding questions pertaining to offending
themes and addons, and TickBox's ability to remove already-downloaded offending
themes and addons from its users' Devices, prevent the Court at this time from issuing
a preliminary injunction that goes beyond maintaining the status quo.  The parties shall
thus work together to gather answers to these outstanding questions and attempt to
agree upon a stipulated preliminary injunction.

## D.   Post-Litigation Modifications

TickBox argues that, "after receiving Plaintiffs' Complaint, [it] voluntarily took
steps to remove links to download those Themes [referenced in the Complaint] on the
[Device]," that it inadvertently failed to remove some themes, and that all themes that
Plaintiffs have specifically complained about "have now been removed from the
[Device] interface."  (Opp. at 10).  Thus, according to TickBox, "there is no need for
an injunction because there is nothing to restrain."  (*Id.*).

TickBox's voluntary cessation of infringing activity would not render the
Motion moot unless it were "*absolutely* clear that the allegedly wrongful behavior
could not reasonably be expected to recur."  *LGS Architects, Inc. v. Concordia Homes
of Nevada*, 434 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Adarand Constructors, Inc. v.
Slater*, 528 U.S. 216, 222 (2000)); *see also Rouser v. White*, 707 F. Supp. 2d 1055,
1071 (E.D. Cal. 2010) (voluntary cessation does not preclude issuance of preliminary
injunction).  Absent an injunction, there is nothing preventing TickBox from again
promoting the offending themes to Device users.  Moreover, as Plaintiffs point out, as
of January 4, 2018, after TickBox's most recent software update, Professor Foster still

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 17-7496-MWF (ASx)                **Date:** **January 30, 2018**
Title:      Universal City Studios Productions LLLP, et al. v. TickBox TV LLC

had access to the "Paradox" theme and all of the addons therein (including Covenant) that he had previously downloaded.  So it is clear that TickBox has not taken any steps to remove previously-downloaded themes that provide ready access to Plaintiffs' copyrighted works from its Devices.  Whether this is ultimately possible or feasible is still an open question.

Accordingly, TickBox's post-litigation modifications have not mooted the Motion.

## III.    **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**.  An initial preliminary injunction that maintains the status quo will issue in a separate order.

Counsel for Plaintiffs and TickBox, working with others who possess relevant technical expertise as necessary, shall negotiate and attempt to reach agreement upon a stipulated preliminary injunction that will supersede the Court's initial preliminary injunction order.  If counsel are able to reach an agreement, they shall file a stipulated preliminary injunction order by **February 7, 2018**.  In the event that counsel are unable to reach an agreement, Plaintiffs and TickBox shall each file a proposed preliminary injunction order along with a memorandum of law, not to exceed seven pages, explaining their positions by **February 12, 2018**.

IT IS SO ORDERED.