1   KELLY M. KLAUS (CA Bar No. 161091)
    kelly.klaus@mto.com
2   ELIZABETH A. KIM (CA Bar No. 295277)
    elizabeth.kim@mto.com
3   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, Fiftieth Floor
4   Los Angeles, California 90071-3426
    Telephone:   (213) 683-9100
5   Facsimile:    (213) 687-3702

6   MICHAEL B. DESANCTIS (admitted *pro hac vice*)
    michael.desanctis@mto.com
7   MUNGER, TOLLES & OLSON LLP
    1155 F Street N.W., Seventh Floor
8   Washington, D.C. 20004-1357
    Telephone:   (202) 220-1100
9   Facsimile:    (202) 220-2300

10  KAREN R. THORLAND (CA Bar No. 172092)
    karen_thorland@mpaa.org
11  MOTION PICTURE ASSOCIATION OF AMERICA, INC.
    15301 Ventura Blvd., Building E
12  Sherman Oaks, California 91403
    Telephone: (818) 935-5812

13
    Attorneys for Plaintiffs
14

15              UNITED STATES DISTRICT COURT

16      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

17

18  | Universal City Studios Productions | Case No. 2:17-cv-07496-MWF(AS) |
    LLLP; Columbia Pictures Industries,
19  Inc.; Disney Enterprises, Inc.;        **PLAINTIFFS' NOTICE OF**
    Twentieth Century Fox Film             **MOTION AND MOTION FOR**
20  Corporation; Paramount Pictures        **LEAVE TO FILE FIRST**
    Corporation; Warner Bros.              **AMENDED COMPLAINT AND TO**
21  Entertainment Inc., Amazon Content     **EXTEND DISCOVERY CUTOFF**
    Services, LLC; Netflix Studios, LLC,
22                                         Date:   July 9, 2018
              Plaintiffs,                  Time:   10:00 a.m.
23                                         Ctrm:   5A (Hon. Michael W. Fitzgerald)
          vs.
24                                         Filed concurrently:
    Tickbox TV LLC,                           Declaration of Kelly M. Klaus
25                                            [Proposed] Order
              Defendant.
26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 9, 2018 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Michael W. Fitzgerald, in Courtroom 5A of the above-captioned Court, located at 350 West First Street, Los Angeles, California, Plaintiffs Universal City Studios Productions LLLP, Columbia Pictures Industries, Inc., Disney Enterprises, Inc., Twentieth Century Fox Film Corporation, Paramount Pictures Corporation, Warner Bros. Entertainment Inc., Amazon Content Services, LLC, and Netflix Studios, LLC (collectively, "Plaintiffs"), will and hereby do move for leave to file a first amended complaint to add appropriate parties to this action.  Plaintiffs request leave to add as Defendants Jeffrey Goldstein, the Chief Executive Officer of Defendant TickBox TV LLC, and Carrla Goldstein, whom Defendant TickBox TV LLC has described as a "member of" TickBox TV LLC, (collectively the "Goldsteins").  Plaintiffs also respectfully request that the Court amend the current discovery schedule to allow a modest extension of the time for completing discovery.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 25, 2018.  Plaintiffs requested that TickBox consent to the filing of an amended complaint and stipulate to an amended case schedule.  TickBox declined to consent.

This Motion is made on the following grounds as explained in the supporting papers:  This Court has jurisdiction to permit an amended complaint.  The Federal Rules and Ninth Circuit precedent require that leave to amend be freely granted when justice so requires.  The five factors considered in assessing the propriety of a motion for leave to amend favor granting this motion.  Specifically, there is no bad faith, undue delay, prejudice or futility, and Plaintiffs have not previously amended.  Moreover, Plaintiffs' request for a modest extension of the discovery cutoff date should be granted to allow the parties to complete necessary fact and expert discovery.

1   This Motion is based on this Notice of Motion and Motion; the accompanying

2   Memorandum of Points and Authorities and exhibits thereto (including the Proposed

3   First Amended Complaint, attached as Ex. A, per Civil L.R. 15-1); and the

4   contemporaneously filed Declaration of Kelly M. Klaus (and exhibits thereto) and

5   Proposed Order; and such further or additional evidence or argument as may be

6   presented before or at the time of the hearing on this Motion.

7

8   DATED:  June 4, 2018                    MUNGER, TOLLES & OLSON LLP

9

10

11                                          By:        */s/ Kelly M. Klaus*

12                                                KELLY M. KLAUS
                                                 Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................1

ARGUMENT......................................................................................................2

     A.    The Court Should Grant Plaintiffs Leave to Amend .............................2

     B.    The Discovery Deadlines Should Be Modestly Extended....................5

     C.    The Court Should Extend the Discovery Schedule Even If It
          Denies Leave to Amend.........................................................................6

CONCLUSION....................................................................................................7

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*,
   742 F. Supp. 2d 1101 (C.D. Cal. 2010) ................................................. 5

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) ................................................................ 4

*Cole v. CRST, Inc.*,
   317 F.R.D. 141 (C.D. Cal. 2016) ....................................................... 2, 5

*Columbia Pictures Indus., Inc. v. Fung*,
   710 F.3d 1020 (9th Cir. 2013) ................................................................ 4

*Committee for Idaho's High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996) .................................................................... 5

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) .............................................................. 2, 5

*Eichler v. Tilton*,
   No. CIVS06-2894-RRB-CMKP, 2008 WL 109340 (E.D. Cal. Jan.
   8, 2008), aff'd, No. CIVS062894JAMCMKP, 2008 WL 3889738
   (E.D. Cal. Aug. 20, 2008) ...................................................................... 4

*Jackson v. Bank of Hawaii*,
   902 F.2d 1385 (9th Cir. 1990) ................................................................ 3

*Johnson v. Buckley*,
   356 F.3d 1067 (9th Cir. 2004) ................................................................ 2

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1986) ................................................................ 5

*United States v. United Healthcare Insurance Company*,
   848 F.3d 1161 (9th Cir. 2016) ................................................................ 4

**FEDERAL RULES**

Rule 7.1 ......................................................................................................... 3

Rule 15 ...................................................................................................... 2, 5

Rule 15(a)(2)..........................................................................................................2

Rule 16.................................................................................................................2

Rule 26(f)..............................................................................................................2

MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND DISCOVERY CUTOFF

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs filed this action against Defendant TickBox TV LLC ("TickBox") on October 13, 2017.  (Dkt. 1.)  Since then, Plaintiffs have moved for and this Court has granted a preliminary injunction.  The parties negotiated a stipulated preliminary injunction, and have engaged in good faith settlement negotiations.

This Motion requests two forms of relief to bring this action to a speedy and just conclusion.  First, Plaintiffs seek leave to amend to add two necessary defendants, Jeffrey and Carrla Goldstein, who own and operate the TickBox service.  Plaintiffs' Proposed Amended Complaint is attached as Exhibit A to this Motion.  The Goldsteins have played an integral role in TickBox's illegal inducement of copyright infringement.  Adding the Goldsteins to the action would best protect Plaintiffs' right to ultimately obtain a damages award.

Second, Plaintiffs request a brief extension of the discovery schedule and follow-on case management dates, as set forth in Exhibit B to this Motion.  This extension will afford the parties the necessary time to complete discovery and prepare for dispositive motions and, if necessary, trial.

### BACKGROUND

The parties stipulated to extend TickBox's time to answer the complaint on November 9, 2017, (Dkt. 18), and TickBox answered on December 8, 2018.  (Dkt. 29.)  Following a meet and confer, Plaintiffs filed their motion for preliminary injunction on December 7, 2017.  (Dkt. 28.)  Pursuant to stipulation and this Court's order, the parties completed briefing on Plaintiffs' motion for preliminary injunction on January 12, 2018, and the Court held a hearing on January 29, 2018.  (Dkts. 33, 34, 37, 38.)  As directed by the Court at the January 29, 2018 hearing, the parties worked diligently to submit a proposed preliminary injunction order by February 7, 2018.  (Dkts. 38, 40, 41.)  The Court entered the preliminary injunction on February 13, 2018.  (Dkt. 44.)

1    Pursuant to the Court's March 6, 2018 scheduling notice, the parties

2    submitted an Amended Joint Rule 26(f) Report on March 21, 2018.  (Dkt. 48.)  The

3    Court did not hold a Rule 16 scheduling conference.  On April 13, 2018, The Court

4    entered an Order re Jury Trial setting forth the operative case schedule.  (Dkt. 50.)

5    The Order set a discovery cut-off date of June 4, 2018.  Plaintiffs served their first

6    set of discovery requests less than two weeks after, on April 25, 2018.  Klaus Decl.

7    Ex. A.  TickBox served its objections 30 days later.  *Id.* Ex. B.  TickBox agreed to

8    produce documents responsive to multiple requests and objected to other requests.

9    However, TickBox has not, as of the date of this filing, produced any responsive

10   documents.

## ARGUMENT

### A.    The Court Should Grant Plaintiffs Leave to Amend

13   Once the time to amend a complaint as a matter of course passes, the Federal

14   Rules of Civil Procedure allow for a party to amend its complaint either with the

15   opposing party's permission or with leave from the court.  Fed. R. Civ. P. 15(a)(2).

16   Rule 15 provides that the Court "should freely give leave when justice so requires."

17   *Id.*; *see also DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)

18   (explaining that Rule 15 embodies a policy of "favoring amendments to pleadings"

19   "with 'extreme liberality'").  "Five factors are taken into account to assess the

20   propriety of a motion for leave to amend: [1] bad faith, [2] undue delay,

21   [3] prejudice to the opposing party, [4] futility of amendment, and [5] whether the

22   plaintiff has previously amended the complaint."  *Johnson v. Buckley*, 356 F.3d

23   1067, 1077 (9th Cir. 2004).  "The burden is on the party opposing amendment to

24   show prejudice."  *Cole v. CRST, Inc*., 317 F.R.D. 141, 146 (C.D. Cal. 2016) (citing

25   *DCD Programs*, 833 F.2d at 187).  "Absent a showing of prejudice or a strong

26   showing of the remaining factors, a presumption exists in favor of granting leave to

27   amend."  *Id.*

28

1    Here, all five factors counsel in favor of permitting leave to amend, TickBox

2    cannot establish prejudice, and leave should be granted.

3        First, it is not bad faith to amend to bring all relevant parties into the action.

4    Plaintiffs did not know the extent to which the Goldsteins were involved in devising,

5    controlling, and financially benefiting from TickBox at the time the Complaint was

6    filed.  It was not until TickBox's opposition to Plaintiffs' motion for preliminary

7    injunction that it became clear that the Goldsteins are the brains behind TickBox's

8    scheme to induce mass infringement of Plaintiffs' copyrighted works.  Jeffrey

9    Goldstein submitted a declaration averring to his position as CEO of TickBox TV

10   LLC and his knowledge and control over TickBox's marketing, promotion, and

11   operations.  (Dkt. 34-1.)  Combined with TickBox's own admission that Carrla

12   Goldstein, Jeffrey Goldstein's spouse, is a "member" and interested party for

13   purposes of Federal Rule of Civil Procedure 7.1 (Dkt. 30), it is now clear that the

14   Goldsteins must be added to this suit.  Bringing the relevant parties into the

15   litigation is not bad faith; it ensures that justice is accomplished by permitting

16   Plaintiffs to protect their rights and recover for their damages from those individuals

17   and entities engaged in the illegal conduct.

18       Second, TickBox cannot establish undue delay because Plaintiffs could not

19   have known the extent of the Goldsteins' involvement at the time of filing the

20   complaint.  *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)

21   (explaining that in considering undue delay, courts analyze "whether the moving

22   party knew or should have known the facts and theories raised by the amendment in

23   the original pleading").  Plaintiffs are filing now to join all relevant parties and to

24   ensure that sufficient assets remain for a damages award after trial.  Even if

25   Plaintiffs could have sought to amend sooner, that is not *undue* delay.  Plaintiffs

26   have been diligently prosecuting this action and engaging in good faith settlement

27   negotiations with TickBox.  Regardless, "[u]ndue delay by itself is insufficient to

28

MOTION FOR LEAVE TO AMEND COMPLAINT AND TO EXTEND DISCOVERY CUTOFF

1   justify denying leave to amend." *United States v. United Healthcare Insurance*
2   *Company*, 848 F.3d 1161, 1184 (9th Cir. 2016).

3         Third, TickBox cannot establish prejudice as to itself or to the Goldsteins.
4   This case is still in early stages, and the proposed amendments are not ones that
5   would greatly expand discovery.  Indeed, the Goldsteins' involvement in TickBox's
6   illegal scheme overlaps with TickBox's, so the discovery may be duplicative; if the
7   Goldsteins are not added, Plaintiffs would seek third party discovery from the
8   Goldsteins.  As it stands, Plaintiffs' discovery requests call for TickBox to search
9   for documents in the Goldsteins' possession.  *See* Klaus Decl. Ex. A at 1 ¶ 1.

10        The Goldsteins cannot claim prejudice from the amendment because Plaintiffs
11  could simply bring a new action against them instead of filing this First Amended
12  Complaint.  Adding the Goldsteins as parties to this action (as opposed to filing a
13  new action) would promote judicial efficiency and the resolution of the entire
14  controversy.  *See Eichler v. Tilton,* No. CIV S-06-2894-RRB-CMK-P, 2008 WL
15  109340, at *2 (E.D. Cal. Jan. 8, 2008), *aff'd,* No. CIV S-06-2894-JAM-CMK-P,
16  2008 WL 3889738 (E.D. Cal. Aug. 20, 2008) ("Granting plaintiff leave to amend
17  will include all defendants in one action, and therefore will promote the speedy
18  resolution of the entire controversy.").

19        Fourth, TickBox cannot prove that amendment here would be futile.
20  Amendment is generally futile when there is a deficiency in the pleading that
21  amendment cannot cure.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656
22  F.3d 1034, 1041 (9th Cir. 2011).  The proposed amendments are justified because
23  the allegations (and evidence) establish that Plaintiffs have valid claims against the
24  Goldsteins.  Individuals, like corporate entities, can be held liable for inducing
25  copyright infringement.  *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d
26  1020, 1023 (9th Cir. 2013) (individual defendant and his company held liable for
27  inducing copyright infringement).  The Goldsteins are directly liable for the illegal
28  conduct of TickBox because, as alleged in the First Amended Complaint, they

devised, executed, promoted, and directed the development and sales of TickBox devices. *See, e.g.*, *Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996) ("[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf") (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985)); *see also Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1115 (C.D. Cal. 2010) ("Certainly, because Ron Petcha is a 'guiding spirit' behind IPTV's activities, including IPTV's alleged copyright infringement, the uncontroverted evidence establishes that he is liable for copyright infringement.")

Fifth, Plaintiffs have not yet amended their complaint, so this factor favors permitting amendment here.

In sum, Rule 15's policy of "extreme liberality" with respect to allowing amendment weighs heavily in favor of granting Plaintiffs' motion. *See DCD Programs*, 833 F.2d at 186. TickBox cannot demonstrate prejudice, nor can it carry its burden of making a "strong showing" that the remaining factors require denial of leave to amend. *See Cole*, 317 F.R.D. at 146.

### B.   The Discovery Deadlines Should Be Modestly Extended

In light of ongoing discovery, settlement negotiations, and Plaintiffs' motion for leave to file an amended complaint, Plaintiffs respectfully request that the Court briefly extend the operative case schedule. Plaintiffs' already served discovery requests include the Goldsteins in the definition of "TickBox." *See* Klaus Decl. Ex. A at 1 ¶ 1. Hence, any additional discovery, if necessary, should be limited to Defendants' ability to pay any statutory damages award and the depth of the Goldsteins' involvement in and knowledge of TickBox's inducement of copyright infringement.

The Court entered the operative scheduling order on April 13, 2018.  The current case schedule ends fact discovery on June 4, 2018.  Plaintiffs served their first discovery requests on TickBox just 11 days after the Court's scheduling order, on April 24, 2018.  *Id.* Ex. A.  And, as noted, while TickBox has responded and agreed to produce documents responsive to multiple requests, TickBox has not as yet made any document production.  TickBox may simply be hoping it can avoid any document production or motion to compel given the discovery cut-off.  The current schedule therefore threatens to severely prejudice Plaintiffs' ability to collect relevant evidence for their liability, damages and permanent injunctive relief cases.  TickBox, on the other hand, would suffer no prejudice as a result of a modest extension of the discovery schedule.

As Plaintiffs have not previously requested that the Court alter the case schedule, Plaintiffs respectfully request that the Court extend the discovery cut-off date by approximately 60 days to August 3, 2018.   Plaintiffs have attached as Exhibit B to this motion a revised Schedule of Pretrial and Trial Dates Worksheet.  This modest extension of time would allow the parties to complete necessary discovery and still get this matter to trial within 14 months of the filing of the original complaint.

### C.   The Court Should Extend the Discovery Schedule Even If It Denies Leave to Amend

Finally, even if the Court is inclined to deny Plaintiffs' request for leave to amend the complaint, Plaintiffs respectfully request that the Court still extend the discovery schedule.  For the reasons set forth in Section B, *supra*, a modest extension of the discovery schedule is necessary to prevent significant prejudice to Plaintiffs and would not prejudice TickBox nor unduly delay the operative case schedule.

# CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for leave to amend the complaint to add the Goldsteins as Defendants and briefly extend the case schedule to allow the parties to complete discovery.

DATED:  June 4, 2018                  MUNGER, TOLLES & OLSON LLP


By:  ___/s/ Kelly M. Klaus___
          KELLY M. KLAUS

Attorneys for Plaintiffs

# EXHIBIT A

KELLY M. KLAUS (CA Bar No. 161091)
kelly.klaus@mto.com
ELIZABETH A. KIM (CA Bar No. 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:   (213) 687-3702

MICHAEL B. DESANCTIS (admitted *pro hac vice*)
michael.desanctis@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Telephone:   (202) 220-1100
Facsimile:   (202) 220-2300

KAREN R. THORLAND (CA Bar No. 172092)
karen_thorland@mpaa.org
MOTION PICTURE ASSOCIATION OF AMERICA, INC.
15301 Ventura Blvd., Building E
Sherman Oaks, California 91403
Telephone: (818) 935-5812

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Universal City Studios Productions LLLP; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Twentieth Century Fox Film Corporation; Paramount Pictures Corporation; Warner Bros. Entertainment Inc.; Amazon Content Services, LLC; Netflix Studios, LLC,<br><br>            Plaintiffs,<br><br>      vs.<br><br>TickBox TV LLC; Jeffrey Goldstein; Carrla Goldstein<br><br>            Defendants. | Case No. 17-cv-07406-MWF(AS)<br><br>**[PROPOSED] FIRST AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Exh A
9

Plaintiffs Universal City Studios Productions LLLP ("Universal"), Columbia Pictures Industries, Inc. ("Columbia"), Disney Enterprises, Inc. ("Disney"), Twentieth Century Fox Film Corporation ("Fox"), Paramount Pictures Corporation ("Paramount"), Warner Bros. Entertainment Inc. ("Warner Bros."), Amazon Content Services, LLC ("Amazon"), and Netflix Studios, LLC ("Netflix") (collectively, "Plaintiffs") bring this First Amended Complaint against TickBox TV LLC ("TickBox"), Jeffrey Goldstein and Carrla Goldstein ("Goldsteins"), (collectively, "Defendants") under the Copyright Act (17 U.S.C. § 101 et seq.). This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).  Plaintiffs allege, on personal knowledge as to themselves and information and belief as to others, as follows:

## INTRODUCTION

1.      Defendants sell "TickBox TV," a computer hardware device that Defendants urge their customers to use as a tool for the mass infringement of Plaintiffs' copyrighted motion pictures and television shows ("Plaintiffs' Copyrighted Works").  Defendants tell customers to "plug the Tickbox TV into your current television and enjoy unlimited access to ALL the hottest TV shows, Hollywood blockbusters and LIVE sporting events in one convenient little device … ABSOLUTELY FREE."  And Defendants promote the device as the means to "cut the cord" if "you're sick of paying high monthly fees and expensive bills for your regular cable bill and premium cable channels like HBO and SHOWTIME … [o]r if you're tired of wasting money with online streaming services like Netflix, Hulu or Amazon Prime."

-1-
FIRST AMENDED COMPLAINT

If you're sick of paying high monthly fees and expensive bills for your regular
cable bill and premium cable channels like HBO and SHOWTIME...

Or if you're tired of wasting money with online streaming services like Netflix,
Hulu, or Amazon Prime...

## Get ready to cut the cord,
## because TickBox TV™ is exactly
## what you're looking for!





Simply plug the Tickbox TV™ into your current television and enjoy
unlimited access to ALL the hottest TV shows, Hollywood blockbusters
and LIVE sporting events in one convenient little device...

**ABSOLUTELY FREE**

2.     What Defendants actually sell is nothing less than illegal access to Plaintiffs' copyrighted content.  It works like this:  Defendants distribute and promote the TickBox TV "box," the black box in the right-hand side of TickBox's ad shown above.  TickBox TV uses software to link TickBox's customers to infringing content on the Internet.  When those customers use TickBox TV as Defendants intend and instruct, Defendants' customers have nearly instantaneous access to multiple sources that stream Plaintiffs' Copyrighted Works without authorization.  These streams are illegal public performances of Plaintiffs' Copyrighted Works.

3.     For the customers who use TickBox TV, the device provides the hallmarks of subscribing to authorized streaming services, with one notable exception:  the customers only pay money to Defendants, not to Plaintiffs and other content creators upon whose works Defendants' business depends.  Plaintiffs bring

Exh A
11

1 | this action to stop Defendants' intentional inducement of, and knowing and material
2 | contribution to, the widespread infringement of Plaintiffs' rights.

3 | **THE PARTIES**

4 |     4.     Plaintiff Universal City Studios Productions LLLP is a limited liability
5 | limited partnership duly organized under the laws of the State of Delaware with its
6 | principal place of business in Universal City, California.  Universal owns or controls
7 | the copyrights or exclusive rights in the content that it or its affiliates produce or
8 | distribute.

9 |     5.     Plaintiff Columbia Pictures Industries, Inc. is a corporation duly
10 | incorporated under the laws of the State of Delaware with its principal place of
11 | business in Culver City, California.  Columbia owns or controls the copyrights or
12 | exclusive rights in the content that it or its affiliates produce or distribute.

13 |     6.     Plaintiff Disney Enterprises, Inc. is a corporation duly incorporated
14 | under the laws of the State of Delaware with its principal place of business in
15 | Burbank, California.  Disney owns or controls the copyrights or exclusive rights in
16 | the content that it or its affiliates produce or distribute.

17 |     7.     Plaintiff Twentieth Century Fox Film Corporation is a corporation duly
18 | incorporated under the laws of the State of Delaware with its principal place of
19 | business in Los Angeles, California.  Fox owns or controls the copyrights or
20 | exclusive rights in the content that it or its affiliates produce or distribute.

21 |     8.     Plaintiff Paramount Pictures Corporation is a corporation duly
22 | incorporated under the laws of the State of Delaware with its principal place of
23 | business in Los Angeles, California.  Paramount owns or controls the copyrights or
24 | exclusive rights in the content that it or its affiliates produce or distribute.

25 |     9.     Plaintiff Warner Bros. Entertainment Inc. is a corporation duly
26 | incorporated under the laws of the State of Delaware with its principal place of
27 | business in Burbank, California.  Warner Bros. owns or controls the copyrights or
28 | exclusive rights in the content that it or its affiliates produce or distribute.

**Exh A
12**

10.     Plaintiff Amazon Content Services, LLC is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Seattle, Washington.  Amazon owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

11.     Plaintiff Netflix Studios, LLC is a limited liability company under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Netflix owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

12.     Plaintiffs have obtained Certificates of Copyright Registration for their Copyrighted Works.  Exhibit A contains a representative list of titles, along with their registration numbers, as to which TickBox has contributed to and induced infringement and continues to contribute to and induce infringement.

13.     TickBox TV LLC is a corporation duly incorporated under the laws of the State of Georgia with its principal place of business at 5887 Glenridge Dr., #400, Sandy Springs, GA 30328.

14.     Jeffrey Goldstein is the CEO of TickBox TV LLC.  Jeffrey Goldstein is a resident of Atlanta, Georgia.

15.     Carrla Goldstein is the "100% owner and manager and organizer of" TickBox TV LLC.  Carrla Goldstein is a resident of Atlanta, Georgia.  As CEO and sole owner, manager and organizer of TickBox TV LLC, the Goldsteins control Tickbox TV LLC, and all three Defendants act in concert in causing and carrying out the unlawful conduct set forth herein.

**JURISDICTION AND VENUE**

16.     This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

17.     Defendants operate an interactive website (www.tickboxtv.com), where Defendants conduct online sales, offers "live chat" technical support, and promote the TickBox TV device.  This website is available to and used by California

-4-
FIRST AMENDED COMPLAINT

Exh A
13

residents.  TickBox TV's widespread and growing popularity is reflected in the roughly half a million unique visitors per month to its website.

18.     Defendants sell and ship TickBox TV devices to California residents. They also provide ongoing technical support to California residents and manages TickBox TV units remotely by facilitating automatic software updates to TickBox TV customers who reside in California.  Defendants utilize the services of companies in California, including Facebook, YouTube, Twitter, and Google+ to advertise and promote TickBox TV to potential customers in California.

19.     Defendants also knowingly and intentionally target Plaintiffs and the State of California by openly encouraging TickBox TV customers in California and elsewhere to obtain "free" streams of infringing content rather than "wasting money with online streaming services like Netflix, Hulu or Amazon Prime."  Defendants encourage these customers to use TickBox TV to obtain infringing access to "Hollywood blockbusters," further demonstrating its intent to target Plaintiffs and the State of California.  Defendants further use Plaintiffs' or their affiliates' trademarks for television channels (e.g., the Disney Channel) to demonstrate the range of available infringing content, and to advertise the availability of the latest "Hollywood blockbusters."

20.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1400(a).

## FACTUAL OVERVIEW

**Plaintiffs and Their Copyrighted Works**

21.     Plaintiffs or their affiliates produce and distribute some of the most popular and critically acclaimed motion pictures and television shows in the world.

22.     Plaintiffs or their affiliates have invested (and continue to invest) substantial resources and effort each year to develop, produce, distribute, and publicly perform their Copyrighted Works.

Exh A
14

23. Plaintiffs or their affiliates own or have the exclusive U.S. rights (among others) to reproduce, distribute, and publicly perform Plaintiffs' Copyrighted Works, including by means of streaming those works over the Internet to the public.

24. Plaintiffs authorize the distribution and public performance of their Copyrighted Works in various formats and through multiple distribution channels, including, by way of example: (a) for exhibition in theaters; (b) through cable and direct-to-home satellite services (including basic, premium, and "pay-per-view"); (c) through authorized, licensed Internet video-on-demand services, including those operated by iTunes, Google Play, Hulu, and VUDU, as well as those operated by Netflix and Amazon (which are affiliates of the copyright-owners Netflix and Amazon that are Plaintiffs here); (d) for private home viewing on DVDs and Blu-ray discs; and (e) for broadcast on television.

25. Plaintiffs have not authorized Defendants, the operators of the third-party sites to which its TickBox TV links, or TickBox's customers, to exercise any of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. § 106.

**Defendants' Inducement of and Contribution to the Infringement of Plaintiffs' Copyrighted Works**

*The TickBox TV Experience*

26.     TickBox TV is easy for customers to install and operate.  Customers need only connect TickBox TV to the Internet and a screen (computer monitor or television) to operate.  Defendants' marketing materials illustrate how easy it is to install TickBox TV (the device itself appears within the red circle in TickBox's ad below, underneath the words, "just plug and play!"):

Exh A
16

27. Defendants market the TickBox device as one that gives their customers direct access to "the largest online media library on the planet," with "virtually all the channels you get from your local cable company," and "without you having to worry about paying rental fees or monthly subscriptions."

28. TickBox TV primarily utilizes two types of software programs. The first is a software media player called "Kodi." Kodi is a third-party "open source" media player, meaning that it operates with many different programs and file formats. Kodi is recognized as the most popular media player for supporting software "addons." An addon is a software program that runs in conjunction with an underlying software program (like Kodi) to provide functionality over and above the functionality that the underlying software provides.

29. TickBox TV also uses individual addons that are designed and maintained for the overarching purpose of scouring the Internet for illegal sources of copyrighted content and returning links to that content. When TickBox TV customers click those links, those customers instantaneously receive unauthorized streams of popular motion pictures and television shows.

1    30.    From the customer's perspective, TickBox TV works as follows.  First,

2    the customer boots up a newly delivered TickBox TV unit.  The device prompts the

3    customer to download "TickBox TV Player" software.  As depicted below, the

4    device then presents the customer with a home screen branded, "Welcome to

5    TickBox TV."  This home screen directs the customer to various routes for

6    obtaining infringing streams, including menu options labeled "WATCH MOVIES

7    TV SPORTS," "Select Your Theme," and "3rd Party LIVE TV Suggestions."  The

8    TickBox TV home menu also offers a link to a "One Click Webinar," encouraging

9    customers to "Learn how to view THOUSANDS of live tv channels for FREE!"



31.     The home menu also displays a "Support" button.  Upon clicking that button, the customer sees a screen with the title:  "TICKBOX TV TECH & INSTALLATION VIDEOS.  BEFORE YOU DO ANYTHING ELSE, START HERE!"  The TickBox TV installation video guides the customer step-by-step through the process of using the TickBox TV device to obtain access to unauthorized streams.



32.     The TickBox TV instructional video further instructs the customer "how to" use the device to obtain infringing content.  The tutorials include: "TickBox TV How to watch a TV Show," "TickBox TV How to search for a Movie," and "TickBox TV How to watch Live TV," and "HOW TO DOWNLOAD ADDONS TO YOUR TICKBOX TV."

33.     The TickBox TV instructional video urges the customer to use the "Select Your Theme" button on the start-up menu for downloading addons.  The "Themes" are curated collections of popular addons that link to unauthorized streams of motion pictures and television shows.  Some of the most popular addons

-10-
FIRST AMENDED COMPLAINT

currently distributed—which are available through TickBox TV—are titled "Elysium," "Bob," and "Covenant."

34.     After completing the set-up and downloading addons per Defendants' directions, the customers use TickBox TV for intended and unquestionably infringing purposes, most notably to obtain instantaneous, unrestricted, and unauthorized access to infringing streams of Plaintiffs' Copyrighted Works.

35.     As noted, "Covenant" is a very popular addon for accessing infringing content.  It is one of the addons that Defendants make it easy for customers for download and use to access infringing streams.  The customer opens Covenant through the TickBox TV device.  Once opened, the customer sees the following welcome screen, which presents Defendants' customer with 15 different categories and search options.  These curated categories include selections of obviously popular and copyrighted content, such as "Box Office," "In Theaters," and "New Movies":



Exh A
20

36.    A TickBox TV customer who selected the "In Theatres" category on September 11, 2017, would have viewed 51 curated results (as circled), the first page of which is depicted below:



37.    In the above example, the third listed title, Fox's *War for the Planet of the Apes*, was released to theaters on July 14, 2017.  As of September 11, 2017, *War for the Planet of the Apes* was not authorized for in-home viewing via video-on-demand distribution, as its distribution was still limited exclusively to theaters.  As of September 11, 2017, several other of the above-listed titles were also not authorized for video-on-demand distribution, as they were still being distributed exclusively to theaters.

38.    Once the TickBox TV customer selects a particular title to stream, he or she has nearly instantaneous access to dozens of links to sources of unauthorized content.  For example, the screenshot below shows a list of results for *War for the Planet of the Apes*.



As the result of just one search, a TickBox TV customer would have had access to 44 different unauthorized sources for streaming *War for the Planet of the Apes*.

39.    TickBox TV customers also have access to information about sources, including whether the source streams content in high-definition or standard-definition resolution.  As the screenshot above shows, the sources for some movies that are still in theaters are listed as "CAM," which indicates that the video was shot illegally by an individual using a camcorder or other recording device in a movie theater.

40.    As depicted in the screenshot below, when a customer selects a source for *War for the Planet of the Apes*, TickBox TV presents a user-friendly interface with buttons to fast-forward, rewind, play, pause, stop, and turn on closed-

captioning, among others.  With just a few clicks, a TickBox TV customer can access an infringing stream of a motion picture that can be seen legally only in theatres.



***Defendants Intentionally Induce Mass Infringement of Plaintiffs' Copyrighted Works***

41.    Defendants promote the use of TickBox TV for overwhelmingly, if not exclusively, infringing purposes, and that is how its customers use TickBox TV.

42.    Defendants advertise TickBox TV as a substitute for authorized and legitimate distribution channels such as cable television or video-on-demand services like Amazon Prime and Netflix.  With a wink and a nod, Defendants tell prospective customers they can "of course" still use "Amazon Video, Netflix or Hulu on Tickbox TV"— but Defendants confidently predict that, "within a few days of using Tickbox TV™ you will find you no longer need those subscriptions" (because TickBox TV is intended to substitute for such services).

43.     Defendants promote TickBox TV as making it easy and efficient for customers to find and access infringing streams and copies of Plaintiffs' Copyrighted Works.  TickBox highlights the ease of finding and watching content on TickBox TV in its online promotional videos, explaining that "the TickBox technology just sends the stream directly to your television … and the installation is as easy as plugging the box into the HDMI port on your TV."[1]

44.     Defendants market TickBox TV as a way to "Get Instant Access to Any Movie, TV Show, or Sporting Events… Without Signing a Contract or Paying a Monthly Service Fee!"  Defendants inform potential customers that once they purchase TickBox TV, all of the content they stream is "ABSOLUTELY FREE."



45.     Defendants urge their customers to stream infringing content.  TickBox promotional materials inform customers that "[y]ou can see almost every movie and TV series ever made.  You can even access movies and shows that are still on

[1] Tickbox TV, Tickbox TV, YOUTUBE, at 1:40-52, https://www.youtube.com/watch?v=c8eF7jiANGI.

Exh A
24

1   Demand and episodes of TV that were just aired.  You will never pay to watch any
2   of them."

3        46.    Defendants boast that TickBox TV offers automatic software updates.
4   Defendants explain that "most content will update daily and if the add on or app
5   needs to be updated it will update automatically."  For example, in September 2017,
6   the automatic update added the "Covenant" addon (described above) to the TickBox
7   TV devices of customers who had set up their devices before Covenant was
8   available on TickBox's download menu.  Defendants thereby ensure that TickBox
9   TV customers will enjoy uninterrupted access to the most popular and up-to-date
10  addons for obtaining access to infringing streams any time.

11       47.    The commercial value of Defendants' business depends on high-
12  volume infringing use through the TickBox TV devices.  TickBox's revenues grow
13  based on the growth in demand for the TickBox TV devices.  The demand for
14  TickBox TV is driven by the promise of free access to infringing content.  These
15  promises depend on and form an integral part of an ecosystem built on the mass
16  infringement of Plaintiffs' Copyrighted Works.

17       48.    As the CEO and "100% owner and manager and organizer of" TickBox
18  TV LLC, respectively, Jeffrey and Carrla Goldstein exercised complete control over
19  the "business of TickBox TV LLC, including its products, marketing materials,
20  website, and terms of service."[2]  In choosing to promote and market the TickBox
21  device as a way for customers to "Get Instant Access to Any Movie, TV Show"
22  "ABSOLUTELY FREE," the Goldsteins intentionally and directly induced the
23  widespread infringement of Plaintiffs' Copyrighted Works.

24       49.    The Goldsteins also exercise control over the TickBox TV interface,
25  including the ability to pick and choose what addons are available for TickBox

26  _____

27  [2] Declaration of Jeffrey Goldstein ¶ 2, ECF. 34-1 (Dec. 28, 2017); Amendment to
    LLC Articles of Organization of TickBox TV LLC on February 18, 2017, filed with
28  State of Georgia Secretary of State, Corporations Division.

customers to download and install via the "Select your Theme" and other related menu options.

## FIRST CAUSE OF ACTION

### (Intentionally Inducing the Infringement of Plaintiffs' Copyrighted Works, 17 U.S.C. § 106)

50.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 49 inclusive.

51.     Defendants have actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

52.     Defendants intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their works.  As intended and encouraged by Defendants, their device connects customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Defendants' customers.  These operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when TickBox TV customers click on a link for the content.

53.     Defendants induce the aforementioned acts of infringement by supplying the physical devices that facilitate, enable, and create direct links between TickBox TV customers and the infringing operators of the streaming services, and by actively inducing, encouraging and promoting the use of its devices for blatant copyright infringement.

54.     Defendants' intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

-17-
FIRST AMENDED COMPLAINT

Exh A
26

55.    Defendants' inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

56.    As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and TickBox's profits in amounts to be proven at trial.

57.    Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of Defendants' willful inducement of infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

58.    Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

59.    As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to induce infringement of Plaintiffs' rights in their Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

**SECOND CAUSE OF ACTION**

**(Contributory Copyright Infringement by Knowingly and Materially Contributing to the Infringement of Plaintiffs' Copyrighted Works, 17 U.S.C. §§ 106(1))**

60.    Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 49 inclusive.

61.    Defendants have actual or constructive knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.  Defendants knowingly and materially contribute to such infringing activity.

62.     Defendants knowingly and materially contribute to the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their works.  Defendants design and promote the use of TickBox TV devices to connect customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to TickBox's customers.  The operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when TickBox TV customers click on a link for the content.

63.     Defendants knowingly and materially contribute to the aforementioned acts of infringement by supplying the physical devices that facilitate, encourage, enable, and create direct links between TickBox TV customers and infringing operators of the streaming services, and by actively encouraging, promoting, and contributing to the use of its devices for blatant copyright infringement.

64.     Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

65.     Defendants' knowing and material contribution to the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

66.     As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiffs are entitled to damages and TickBox's profits in amounts to be proven at trial.

67.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of

Exh A
28

1 Defendants' willful, knowing, and material contribution to infringement, or for such

2 other amounts as may be proper under 17 U.S.C. § 504.

3    68.    Plaintiffs further are entitled to recover their attorneys' fees and full

4 costs pursuant to 17 U.S.C. § 505.

5    69.    As a direct and proximate result of the foregoing acts and conduct,

6 Plaintiffs have sustained and will continue to sustain substantial, immediate and

7 irreparable injury, for which there is no adequate remedy at law.  Unless enjoined

8 and restrained by this Court, Defendants will continue to knowingly and materially

9 contribute to the infringement of Plaintiffs' rights in their Copyrighted Works.

10 Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

**PRAYER FOR RELIEF**

12    WHEREFORE, Plaintiffs pray for judgment against Defendants and for the

13 following relief:

14    1.    For Plaintiffs' damages and TickBox's profits in such amount as may

15 be found; alternatively, at Plaintiffs' election, for maximum statutory damages; or

16 for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

17    2.    For preliminary and permanent injunctions (a) enjoining Defendants

18 and their officers, agents, servants, employees, attorneys, and all persons acting in

19 active concert or participation with them, from publicly performing or otherwise

20 infringing in any manner (including without limitation by materially contributing to

21 or intentionally inducing the infringement of) any right under copyright in any of

22 Plaintiffs' Copyrighted Works, including without limitation by publicly performing

23 those Works, or by distributing any software or providing any service or device that

24 does or facilitates any of the foregoing acts; and (b) impounding all TickBox TV

25 devices in Defendants' possession, custody, or control, and any and all documents

26 or other records in Defendants' possession, custody, or control relating to

27 Defendants' contribution to and inducement of the infringement of Plaintiffs'

28 Copyrighted Works.

-20-
FIRST AMENDED COMPLAINT

**Exh A**
**29**

1       3.     For prejudgment interest according to law.

2       4.     For Plaintiffs' attorneys' fees and full costs incurred in this action

3 pursuant to 17 U.S.C. § 505.

4       5.     For all such further and additional relief, in law or in equity, to which

5 Plaintiffs may be entitled or which the Court deems just and proper.

6                     **DEMAND FOR JURY TRIAL**

7       Plaintiffs demand a trial by jury on all issues triable by jury.

8

9 DATED:  June 4, 2018            MUNGER, TOLLES & OLSON LLP

10

11                    By:  */s/ Kelly M. Klaus*

12                       KELLY M. KLAUS
                        Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-21-
FIRST AMENDED COMPLAINT

# FIRST AMENDED COMPLAINT EXHIBIT A

**Representative List of Works Available on TickBox TV**

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| The Purge: Election Year | Universal City Studios Productions LLLP | PA1-995-003 | 7/11/2016 |
| Despicable Me 3 | Universal City Studios Productions LLLP | PA2-043-544 | 6/27/2017 |
| The Boss | Universal City Studios Productions LLLP | PA1-993-610 | 4/7/2016 |
| Jurassic World | Universal City Studios Productions LLLP; Amblin Entertainment LLC | PA1-946-359 | 6/10/2015 |
| The Shallows | Columbia Pictures Industries, Inc. | PA1-993-394 | 7/13/2016 |
| Miracles from Heaven | Columbia Pictures Industries, Inc. | PA1-981-803 | 4/7/2016 |
| Spiderman: Homecoming | Columbia Pictures Industries, Inc. | PA2-044-059 | 7/7/2017 |
| Rough Night | Columbia Pictures Industries, Inc. | PA2-041-774 | 6/30/2017 |
| Smurfs: The Lost Village | Columbia Pictures Industries, Inc. | PA 2-029-508 | 4/21/2017 |
| Pete's Dragon | Disney Enterprises, Inc. | PA1-998-053 | 8/26/2016 |
| The Finest Hours | Disney Enterprises, Inc. | PA1-989-069 | 5/27/2016 |
| Maleficent | Disney Enterprises, Inc. | PA1-899-203 | 6/10/2014 |
| Alice Through the Looking Glass | Disney Enterprises, Inc. | PA1-991-651 | 6/28/2016 |
| Into the Woods | Disney Enterprises, Inc. | PA1-932-175 | 2/11/2015 |
| Independence Day: Resurgence | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA1-994-450 | 7/22/2016 |
| Deadpool | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA1-977-152 | 3/4/2016 |
| Ice Age, Collision Course | Twentieth Century Fox Film Corporation | PA1-995-002 | 7/27/2016 |
| Ice Age: The Meltdown | Twentieth Century Fox Film Corporation | PA1-306-625 | 3/31/2006 |

i

**Exh A**
**32**

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| War for the Planet of the Apes | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA2-044-947 | 7/25/2017 |
| Paranormal Activity: The Ghost Dimension | Paramount Pictures Corporation | PA1-960-100 | 10/23/2015 |
| Zoolander 2 | Paramount Pictures Corporation | PA1-974-008 | 2/16/2016 |
| 13 Hours: The Secret Soldiers of Benghazi | Paramount Pictures Corporation | PA1-969-757 | 1/19/2016 |
| Whiskey Tango Foxtrot | Paramount Pictures Corporation | PA1-977-149 | 3/4/2016 |
| Wonder Woman | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA2-036-078 | 6/6/2017 |
| Batman v. Superman: Dawn of Justice | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA1-981-624 | 3/30/2016 |
| Dunkirk | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA2-044-585 | 7/20/2017 |
| Harry Potter and the Deathly Hallows Part 1 | Warner Bros. Entertainment Inc. | PA1-721-904 | 3/4/2011 |
| Suicide Squad | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA1-995-698 | 8/4/2016 |
| Bosch, Season 1, Episode 1 | Amazon Content Services LLC | PA2-000-165 | 2/10/2016 |
| The Man in the High Castle, Season 1, Episode 1 | Amazon Content Services LLC | PA2-006-699 | 1/15/2015 |
| Transparent, Season 1, Episode 1 | Amazon Content Services LLC | PA1-930-949 | 12/3/2014 |
| Mozart in the Jungle, Season 1, Episode 1 | Amazon Content Services LLC | PA1-963-304 | 3/23/2015 |
| Bosch, Season 1, Episode 1 | Amazon Content Services LLC | PA2-000-165 | 2/10/2016 |
| The Oa, Season 1, Episode 1 | Netflix Studios, LLC | PA2-029-045 | 1/18/2017 |

ii

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| Santa Clarita Diet, Season 1, Episode 1 | Netflix Studios, LLC | PA2-028-853 | 2/3/2017 |
| Stranger Things, Season 1, Episode 8 | Netflix Studios, LLC | PA2-009-908 | 9/26/2016 |
| Wet Hot American Summer: First Day of Camp, Season 1, Episode 1 | Netflix Studios, LLC | PA1-996-639 | 4/19/2016 |
| Easy, Season 1, Episode 1 | Netflix Studios, LLC | PA2-009-863 | 9/26/2016 |

**Exh A
34**

# EXHIBIT B

## JUDGE MICHAEL W. FITZGERALD
## SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

| **Case No.** | 2:17-cv-07496-MWF(AS) |
|---|---|
| **Case Name** | Universal City Studios Productions LLLP; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Twentieth Century Fox Film Corporation; Paramount Pictures Corporation; Warner Bros. Entertainment Inc.; Amazon Content Services, LLC; Netflix Studios, LLC v. TickBox TV LLC |

| Matter | | Plaintiff(s)' Date mo / day / year | Defendant(s)' Date mo / day / year | Court Order |
|---|---|---|---|---|
| [ x ] Jury Trial  *or*  [  ] Court Trial<br><br>**(Tuesday at 8:30 a.m.)**          Duration Estimate:<u>5-8</u> Days | | 12/17/18 | | |
| Final Pretrial Conference [LR 16] and Hearing on Motions *In Limine*<br><br>**(Monday at 11:00 a.m. -- <u>three (3)</u> weeks before trial date)**<br><br>Motions *In Limine* must be filed **<u>three (3) weeks</u>** before this date; oppositions are due **<u>two (2) weeks</u>** before this date; no reply briefs. | | 11/26/18 | | |

| Event | Weeks Before Trial | Plaintiff(s)' Date mo / day / year | Defendant(s)' Date mo / day / year | Court Order |
|---|---|---|---|---|
| Last Date to Hear Motion to Amend Pleadings /Add Parties | | 8/3/2018 | | |
| Non−Expert Discovery Cut−Off (at least 4 weeks before last date to hear motions) | 18 | 8/3/2018 | | |
| Expert Disclosure (Initial) | | 8/3/2018 | | |
| Expert Disclosure (Rebuttal) | | 8/24/2018 | | |
| Expert Discovery Cut−Off | 14* | 9/14/2018 | | |
| Last Date to ***Hear*** Motions (Monday at 10:00 a.m.) | 14** | 9/14/2018 | | |
| Last Date to Conduct Settlement Conference | 12 | 9/28/2018 | | |
| <u>For Jury Trial</u><br>• File Memorandum of Contentions of Fact and Law, LR 16−4<br>• File Exhibit and Witness Lists, LR 16−5.6<br>• File Status Report Regarding Settlement<br>• File Motions *In Limine* | 6 | 11/5/2018 | | |
| <u>For Jury Trial</u><br>• Lodge Pretrial Conference Order, LR 16−7<br>• File Agreed Set of Jury Instructions and Verdict Forms<br>• File Statement Regarding Disputed Instructions, Verdicts, etc.<br>• File Oppositions to Motions *In Limine* | 5 | 11/12/2018 | | |
| <u>For Court Trial</u><br>• Lodge Findings of Fact and Conclusions of Law, LR 52, and Summaries of Direct Testimony | | | | |

\* The parties may choose to cut off expert discovery prior to MSJ briefing.
\*\* Motions for class certification shall be filed in accordance with Local Rule 23−3.

ADR [LR 16−15] Selection:

☐ Attorney Settlement Officer Panel          ☐ Private Mediation          X Magistrate Judge (with Court approval)

**Exh B**
**36**