KELLY M. KLAUS (CA Bar No. 161091)
kelly.klaus@mto.com
ELIZABETH A. KIM (CA Bar No. 295277)
elizabeth.kim@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

MICHAEL B. DESANCTIS (admitted *pro hac vice*)
michael.desanctis@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street N.W., Seventh Floor
Washington, D.C. 20004-1357
Telephone:   (202) 220-1100
Facsimile:    (202) 220-2300

KAREN R. THORLAND (CA Bar No. 172092)
karen_thorland@mpaa.org
MOTION PICTURE ASSOCIATION OF AMERICA, INC.
15301 Ventura Blvd., Building E
Sherman Oaks, California 91403
Telephone: (818) 935-5812

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Universal City Studios Productions LLLP; Columbia Pictures Industries, Inc.; Disney Enterprises, Inc.; Twentieth Century Fox Film Corporation; Paramount Pictures Corporation; Warner Bros. Entertainment Inc.; Amazon Content Services, LLC; Netflix Studios, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> TickBox TV LLC; Jeffrey Goldstein; Carrla Goldstein <br><br> Defendants. | Case No. 17-cv-07496-MWF(AS) <br><br> **FIRST AMENDED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

39201496.1

1      Plaintiffs Universal City Studios Productions LLLP ("Universal"), Columbia

2  Pictures Industries, Inc. ("Columbia"), Disney Enterprises, Inc. ("Disney"),

3  Twentieth Century Fox Film Corporation ("Fox"), Paramount Pictures Corporation

4  ("Paramount"), Warner Bros. Entertainment Inc. ("Warner Bros."), Amazon

5  Content Services, LLC ("Amazon"), and Netflix Studios, LLC ("Netflix")

6  (collectively, "Plaintiffs") bring this First Amended Complaint against TickBox TV

7  LLC ("TickBox"), Jeffrey Goldstein and Carrla Goldstein ("Goldsteins"),

8  (collectively, "Defendants") under the Copyright Act (17 U.S.C. § 101 et seq.).

9  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a),

10  and 17 U.S.C. § 501(b).  Plaintiffs allege, on personal knowledge as to themselves

11  and information and belief as to others, as follows:

12                       **INTRODUCTION**

13     1.    Defendants sell "TickBox TV," a computer hardware device that

14  Defendants urge their customers to use as a tool for the mass infringement of

15  Plaintiffs' copyrighted motion pictures and television shows ("Plaintiffs'

16  Copyrighted Works").  Defendants tell customers to "plug the Tickbox TV into your

17  current television and enjoy unlimited access to ALL the hottest TV shows,

18  Hollywood blockbusters and LIVE sporting events in one convenient little device …

19  ABSOLUTELY FREE."  And Defendants promote the device as the means to "cut

20  the cord" if "you're sick of paying high monthly fees and expensive bills for your

21  regular cable bill and premium cable channels like HBO and SHOWTIME … [o]r if

22  you're tired of wasting money with online streaming services like Netflix, Hulu or

23  Amazon Prime."

24

25

26

27

28

-1-
**FIRST AMENDED COMPLAINT**

1

2   If you're sick of paying high monthly fees and expensive bills for your regular
cable bill and premium cable channels like HBO and SHOWTIME...

3   Or if you're tired of wasting money with online streaming services like Netflix,
Hulu, or Amazon Prime...

4

5   ## Get ready to cut the cord, because TickBox TV™ is exactly what you're looking for!

6

7

8   

9

10  

11

12  Simply plug the Tickbox TV™ into your current television and enjoy
unlimited access to ALL the hottest TV shows, Hollywood blockbusters
and LIVE sporting events in one convenient little device...

13  **ABSOLUTELY FREE**

14

15      2.      What Defendants actually sell is nothing less than illegal access to

16  Plaintiffs' copyrighted content.  It works like this:  Defendants distribute and

17  promote the TickBox TV "box," the black box in the right-hand side of TickBox's

18  ad shown above.  TickBox TV uses software to link TickBox's customers to

19  infringing content on the Internet.  When those customers use TickBox TV as

20  Defendants intend and instruct, Defendants' customers have nearly instantaneous

21  access to multiple sources that stream Plaintiffs' Copyrighted Works without

22  authorization.  These streams are illegal public performances of Plaintiffs'

23  Copyrighted Works.

24      3.      For the customers who use TickBox TV, the device provides the

25  hallmarks of subscribing to authorized streaming services, with one notable

26  exception:  the customers only pay money to Defendants, not to Plaintiffs and other

27  content creators upon whose works Defendants' business depends.  Plaintiffs bring

28

this action to stop Defendants' intentional inducement of, and knowing and material contribution to, the widespread infringement of Plaintiffs' rights.

**THE PARTIES**

4.     Plaintiff Universal City Studios Productions LLLP is a limited liability limited partnership duly organized under the laws of the State of Delaware with its principal place of business in Universal City, California.  Universal owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

5.     Plaintiff Columbia Pictures Industries, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Culver City, California.  Columbia owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

6.     Plaintiff Disney Enterprises, Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Disney owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

7.     Plaintiff Twentieth Century Fox Film Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Fox owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

8.     Plaintiff Paramount Pictures Corporation is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Paramount owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

9.     Plaintiff Warner Bros. Entertainment Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Warner Bros. owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

10.     Plaintiff Amazon Content Services, LLC is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Seattle, Washington.  Amazon owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

11.     Plaintiff Netflix Studios, LLC is a limited liability company under the laws of the State of Delaware with its principal place of business in Los Angeles, California.  Netflix owns or controls the copyrights or exclusive rights in the content that it or its affiliates produce or distribute.

12.     Plaintiffs have obtained Certificates of Copyright Registration for their Copyrighted Works.  Exhibit A contains a representative list of titles, along with their registration numbers, as to which TickBox has contributed to and induced infringement and continues to contribute to and induce infringement.

13.     TickBox TV LLC is a corporation duly incorporated under the laws of the State of Georgia with its principal place of business at 5887 Glenridge Dr., #400, Sandy Springs, GA 30328.

14.     Jeffrey Goldstein is the CEO of TickBox TV LLC.  Jeffrey Goldstein is a resident of Atlanta, Georgia.

15.     Carrla Goldstein is the "100% owner and manager and organizer of" TickBox TV LLC.  Carrla Goldstein is a resident of Atlanta, Georgia.  As CEO and sole owner, manager and organizer of TickBox TV LLC, the Goldsteins control Tickbox TV LLC, and all three Defendants act in concert in causing and carrying out the unlawful conduct set forth herein.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

17.     Defendants operate an interactive website (www.tickboxtv.com), where Defendants conduct online sales, offers "live chat" technical support, and promote the TickBox TV device.  This website is available to and used by California

-4-

1  residents.  TickBox TV's widespread and growing popularity is reflected in the

2  roughly half a million unique visitors per month to its website.

3       18.    Defendants sell and ship TickBox TV devices to California residents.

4  They also provide ongoing technical support to California residents and manages

5  TickBox TV units remotely by facilitating automatic software updates to TickBox

6  TV customers who reside in California.  Defendants utilize the services of

7  companies in California, including Facebook, YouTube, Twitter, and Google+ to

8  advertise and promote TickBox TV to potential customers in California.

9       19.    Defendants also knowingly and intentionally target Plaintiffs and the

10  State of California by openly encouraging TickBox TV customers in California and

11  elsewhere to obtain "free" streams of infringing content rather than "wasting money

12  with online streaming services like Netflix, Hulu or Amazon Prime."  Defendants

13  encourage these customers to use TickBox TV to obtain infringing access to

14  "Hollywood blockbusters," further demonstrating its intent to target Plaintiffs and

15  the State of California.  Defendants further use Plaintiffs' or their affiliates'

16  trademarks for television channels (e.g., the Disney Channel) to demonstrate the

17  range of available infringing content, and to advertise the availability of the latest

18  "Hollywood blockbusters."

19       20.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b),

20  1400(a).

21                              **FACTUAL OVERVIEW**

22  **Plaintiffs and Their Copyrighted Works**

23       21.    Plaintiffs or their affiliates produce and distribute some of the most

24  popular and critically acclaimed motion pictures and television shows in the world.

25       22.    Plaintiffs or their affiliates have invested (and continue to invest)

26  substantial resources and effort each year to develop, produce, distribute, and

27  publicly perform their Copyrighted Works.

28

23.     Plaintiffs or their affiliates own or have the exclusive U.S. rights (among others) to reproduce, distribute, and publicly perform Plaintiffs' Copyrighted Works, including by means of streaming those works over the Internet to the public.

24.     Plaintiffs authorize the distribution and public performance of their Copyrighted Works in various formats and through multiple distribution channels, including, by way of example: (a) for exhibition in theaters; (b) through cable and direct-to-home satellite services (including basic, premium, and "pay-per-view"); (c) through authorized, licensed Internet video-on-demand services, including those operated by iTunes, Google Play, Hulu, and VUDU, as well as those operated by Netflix and Amazon (which are affiliates of the copyright-owners Netflix and Amazon that are Plaintiffs here); (d) for private home viewing on DVDs and Blu-ray discs; and (e) for broadcast on television.

25.     Plaintiffs have not authorized Defendants, the operators of the third-party sites to which its TickBox TV links, or TickBox's customers, to exercise any of Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. § 106.

**Defendants' Inducement of and Contribution to the Infringement of Plaintiffs' Copyrighted Works**

*The TickBox TV Experience*

26.     TickBox TV is easy for customers to install and operate.  Customers need only connect TickBox TV to the Internet and a screen (computer monitor or television) to operate.  Defendants' marketing materials illustrate how easy it is to install TickBox TV (the device itself appears within the red circle in TickBox's ad below, underneath the words, "just plug and play!"):



-7-

FIRST AMENDED COMPLAINT

27.     Defendants market the TickBox device as one that gives their customers direct access to "the largest online media library on the planet," with "virtually all the channels you get from your local cable company," and "without you having to worry about paying rental fees or monthly subscriptions."

28.     TickBox TV primarily utilizes two types of software programs.  The first is a software media player called "Kodi."  Kodi is a third-party "open source" media player, meaning that it operates with many different programs and file formats.  Kodi is recognized as the most popular media player for supporting software "addons." An addon is a software program that runs in conjunction with an underlying software program (like Kodi) to provide functionality over and above the functionality that the underlying software provides.

29.     TickBox TV also uses individual addons that are designed and maintained for the overarching purpose of scouring the Internet for illegal sources of copyrighted content and returning links to that content.  When TickBox TV customers click those links, those customers instantaneously receive unauthorized streams of popular motion pictures and television shows.

30.     From the customer's perspective, TickBox TV works as follows.  First, the customer boots up a newly delivered TickBox TV unit.  The device prompts the customer to download "TickBox TV Player" software.  As depicted below, the device then presents the customer with a home screen branded, "Welcome to TickBox TV."  This home screen directs the customer to various routes for obtaining infringing streams, including menu options labeled "WATCH MOVIES TV SPORTS," "Select Your Theme," and "3rd Party LIVE TV Suggestions."  The TickBox TV home menu also offers a link to a "One Click Webinar," encouraging customers to "Learn how to view THOUSANDS of live tv channels for FREE!"



31.     The home menu also displays a "Support" button.  Upon clicking that button, the customer sees a screen with the title:  "TICKBOX TV TECH & INSTALLATION VIDEOS.  BEFORE YOU DO ANYTHING ELSE, START HERE!"  The TickBox TV installation video guides the customer step-by-step through the process of using the TickBox TV device to obtain access to unauthorized streams.



32.     The TickBox TV instructional video further instructs the customer "how to" use the device to obtain infringing content.  The tutorials include: "TickBox TV How to watch a TV Show," "TickBox TV How to search for a Movie," and "TickBox TV How to watch Live TV," and "HOW TO DOWNLOAD ADDONS TO YOUR TICKBOX TV."

33.     The TickBox TV instructional video urges the customer to use the "Select Your Theme" button on the start-up menu for downloading addons.  The "Themes" are curated collections of popular addons that link to unauthorized streams of motion pictures and television shows.  Some of the most popular addons

currently distributed—which are available through TickBox TV—are titled "Elysium," "Bob," and "Covenant."

34.     After completing the set-up and downloading addons per Defendants' directions, the customers use TickBox TV for intended and unquestionably infringing purposes, most notably to obtain instantaneous, unrestricted, and unauthorized access to infringing streams of Plaintiffs' Copyrighted Works.

35.     As noted, "Covenant" is a very popular addon for accessing infringing content.  It is one of the addons that Defendants make it easy for customers for download and use to access infringing streams.  The customer opens Covenant through the TickBox TV device.  Once opened, the customer sees the following welcome screen, which presents Defendants' customer with 15 different categories and search options.  These curated categories include selections of obviously popular and copyrighted content, such as "Box Office," "In Theaters," and "New Movies":



FIRST AMENDED COMPLAINT

36.     A TickBox TV customer who selected the "In Theatres" category on September 11, 2017, would have viewed 51 curated results (as circled), the first page of which is depicted below:



37.     In the above example, the third listed title, Fox's *War for the Planet of the Apes*, was released to theaters on July 14, 2017.  As of September 11, 2017, *War for the Planet of the Apes* was not authorized for in-home viewing via video-on-demand distribution, as its distribution was still limited exclusively to theaters.  As of September 11, 2017, several other of the above-listed titles were also not authorized for video-on-demand distribution, as they were still being distributed exclusively to theaters.

38.     Once the TickBox TV customer selects a particular title to stream, he or she has nearly instantaneous access to dozens of links to sources of unauthorized content.  For example, the screenshot below shows a list of results for *War for the Planet of the Apes*.



As the result of just one search, a TickBox TV customer would have had access to 44 different unauthorized sources for streaming *War for the Planet of the Apes*.

39.     TickBox TV customers also have access to information about sources, including whether the source streams content in high-definition or standard-definition resolution.  As the screenshot above shows, the sources for some movies that are still in theaters are listed as "CAM," which indicates that the video was shot illegally by an individual using a camcorder or other recording device in a movie theater.

40.     As depicted in the screenshot below, when a customer selects a source for *War for the Planet of the Apes*, TickBox TV presents a user-friendly interface with buttons to fast-forward, rewind, play, pause, stop, and turn on closed-

captioning, among others.  With just a few clicks, a TickBox TV customer can access an infringing stream of a motion picture that can be seen legally only in theatres.



### *Defendants Intentionally Induce Mass Infringement of Plaintiffs' Copyrighted Works*

41.     Defendants promote the use of TickBox TV for overwhelmingly, if not exclusively, infringing purposes, and that is how its customers use TickBox TV.

42.     Defendants advertise TickBox TV as a substitute for authorized and legitimate distribution channels such as cable television or video-on-demand services like Amazon Prime and Netflix.  With a wink and a nod, Defendants tell prospective customers they can "of course" still use "Amazon Video, Netflix or Hulu on Tickbox TV"— but Defendants confidently predict that, "within a few days of using Tickbox TV™ you will find you no longer need those subscriptions" (because TickBox TV is intended to substitute for such services).

43.     Defendants promote TickBox TV as making it easy and efficient for customers to find and access infringing streams and copies of Plaintiffs' Copyrighted Works.  TickBox highlights the ease of finding and watching content on TickBox TV in its online promotional videos, explaining that "the TickBox technology just sends the stream directly to your television … and the installation is as easy as plugging the box into the HDMI port on your TV."[1]

44.      Defendants market TickBox TV as a way to "Get Instant Access to Any Movie, TV Show, or Sporting Events… Without Signing a Contract or Paying a Monthly Service Fee!"  Defendants inform potential customers that once they purchase TickBox TV, all of the content they stream is "ABSOLUTELY FREE."



45.     Defendants urge their customers to stream infringing content.  TickBox promotional materials inform customers that "[y]ou can see almost every movie and TV series ever made.  You can even access movies and shows that are still on

---

[1] Tickbox TV, Tickbox TV, YOUTUBE, at 1:40-52, https://www.youtube.com/watch?v=c8eF7jiANGI.

1  Demand and episodes of TV that were just aired.  You will never pay to watch any
2  of them."

3       46.    Defendants boast that TickBox TV offers automatic software updates.
4  Defendants explain that "most content will update daily and if the add on or app
5  needs to be updated it will update automatically."  For example, in September 2017,
6  the automatic update added the "Covenant" addon (described above) to the TickBox
7  TV devices of customers who had set up their devices before Covenant was
8  available on TickBox's download menu.  Defendants thereby ensure that TickBox
9  TV customers will enjoy uninterrupted access to the most popular and up-to-date
10 addons for obtaining access to infringing streams any time.

11      47.    The commercial value of Defendants' business depends on high-
12 volume infringing use through the TickBox TV devices.  TickBox's revenues grow
13 based on the growth in demand for the TickBox TV devices.  The demand for
14 TickBox TV is driven by the promise of free access to infringing content.  These
15 promises depend on and form an integral part of an ecosystem built on the mass
16 infringement of Plaintiffs' Copyrighted Works.

17      48.    As the CEO and "100% owner and manager and organizer of" TickBox
18 TV LLC, respectively, Jeffrey and Carrla Goldstein exercised complete control over
19 the "business of TickBox TV LLC, including its products, marketing materials,
20 website, and terms of service."[2]  In choosing to promote and market the TickBox
21 device as a way for customers to "Get Instant Access to Any Movie, TV Show"
22 "ABSOLUTELY FREE," the Goldsteins intentionally and directly induced the
23 widespread infringement of Plaintiffs' Copyrighted Works.

24      49.    The Goldsteins also exercise control over the TickBox TV interface,
25 including the ability to pick and choose what addons are available for TickBox

26 _____

27 [2] Declaration of Jeffrey Goldstein ¶ 2, ECF. 34-1 (Dec. 28, 2017); Amendment to
   LLC Articles of Organization of TickBox TV LLC on February 18, 2017, filed with
28 State of Georgia Secretary of State, Corporations Division.

customers to download and install via the "Select your Theme" and other related menu options.

## FIRST CAUSE OF ACTION

### (Intentionally Inducing the Infringement of Plaintiffs' Copyrighted Works, 17 U.S.C. § 106)

50. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 49 inclusive.

51. Defendants have actual knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.

52. Defendants intentionally induce the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their works.  As intended and encouraged by Defendants, their device connects customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to Defendants' customers.  These operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when TickBox TV customers click on a link for the content.

53. Defendants induce the aforementioned acts of infringement by supplying the physical devices that facilitate, enable, and create direct links between TickBox TV customers and the infringing operators of the streaming services, and by actively inducing, encouraging and promoting the use of its devices for blatant copyright infringement.

54. Defendants' intentional inducement of the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

55.     Defendants' inducement of the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

56.     As a direct and proximate result of the infringement that Defendants intentionally induce, Plaintiffs are entitled to damages and TickBox's profits in amounts to be proven at trial.

57.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of Defendants' willful inducement of infringement, or for such other amounts as may be proper under 17 U.S.C. § 504.

58.     Plaintiffs further are entitled to recover their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

59.     As a direct and proximate result of the foregoing acts and conduct, Plaintiffs have sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Defendants will continue to induce infringement of Plaintiffs' rights in their Copyrighted Works.  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

**SECOND CAUSE OF ACTION**

**(Contributory Copyright Infringement by Knowingly and Materially Contributing to the Infringement of Plaintiffs' Copyrighted Works, 17 U.S.C. §§ 106(1))**

60.     Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 49 inclusive.

61.     Defendants have actual or constructive knowledge of third parties' infringement of Plaintiffs' exclusive rights under the Copyright Act.  Defendants knowingly and materially contribute to such infringing activity.

62.     Defendants knowingly and materially contribute to the infringement of Plaintiffs' exclusive rights under the Copyright Act, including infringement of Plaintiffs' exclusive right to publicly perform their works.  Defendants design and promote the use of TickBox TV devices to connect customers to unauthorized online sources that stream Plaintiffs' Copyrighted Works.  The operators of these source repositories directly infringe Plaintiffs' public performance rights by providing unauthorized streams of the works to the public, including to TickBox's customers.  The operators, or others operating in concert with them, control the facilities and equipment used to store and stream the content, and they actively and directly cause the content to be streamed when TickBox TV customers click on a link for the content.

63.     Defendants knowingly and materially contribute to the aforementioned acts of infringement by supplying the physical devices that facilitate, encourage, enable, and create direct links between TickBox TV customers and infringing operators of the streaming services, and by actively encouraging, promoting, and contributing to the use of its devices for blatant copyright infringement.

64.     Defendants' knowing and material contribution to the infringement of Plaintiffs' rights in each of their Copyrighted Works constitutes a separate and distinct act of infringement.

65.     Defendants' knowing and material contribution to the infringement of Plaintiffs' Copyrighted Works is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiffs.

66.     As a direct and proximate result of the infringement to which Defendants knowingly and materially contribute, Plaintiffs are entitled to damages and TickBox's profits in amounts to be proven at trial.

67.     Alternatively, at their election, Plaintiffs are entitled to statutory damages, up to the maximum amount of $150,000 per work infringed by virtue of

1  Defendants' willful, knowing, and material contribution to infringement, or for such
2  other amounts as may be proper under 17 U.S.C. § 504.

3      68.    Plaintiffs further are entitled to recover their attorneys' fees and full
4  costs pursuant to 17 U.S.C. § 505.

5      69.    As a direct and proximate result of the foregoing acts and conduct,
6  Plaintiffs have sustained and will continue to sustain substantial, immediate and
7  irreparable injury, for which there is no adequate remedy at law.  Unless enjoined
8  and restrained by this Court, Defendants will continue to knowingly and materially
9  contribute to the infringement of Plaintiffs' rights in their Copyrighted Works.
10  Plaintiffs are entitled to injunctive relief under 17 U.S.C. § 502.

11  **PRAYER FOR RELIEF**

12      WHEREFORE, Plaintiffs pray for judgment against Defendants and for the
13  following relief:

14      1.    For Plaintiffs' damages and TickBox's profits in such amount as may
15  be found; alternatively, at Plaintiffs' election, for maximum statutory damages; or
16  for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c).

17      2.    For preliminary and permanent injunctions (a) enjoining Defendants
18  and their officers, agents, servants, employees, attorneys, and all persons acting in
19  active concert or participation with them, from publicly performing or otherwise
20  infringing in any manner (including without limitation by materially contributing to
21  or intentionally inducing the infringement of) any right under copyright in any of
22  Plaintiffs' Copyrighted Works, including without limitation by publicly performing
23  those Works, or by distributing any software or providing any service or device that
24  does or facilitates any of the foregoing acts; and (b) impounding all TickBox TV
25  devices in Defendants' possession, custody, or control, and any and all documents
26  or other records in Defendants' possession, custody, or control relating to
27  Defendants' contribution to and inducement of the infringement of Plaintiffs'
28  Copyrighted Works.

-20-

3.     For prejudgment interest according to law.

4.     For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. § 505.

5.     For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues triable by jury.

DATED:  July 6, 2018                    MUNGER, TOLLES & OLSON LLP


                                        By:  */s/ Kelly M. Klaus*
                                             KELLY M. KLAUS
                                        Attorneys for Plaintiffs

# FIRST AMENDED COMPLAINT EXHIBIT A

**Representative List of Works Available on TickBox TV**

| Title | Copyright Registrants | Registration Number | Registration Date |
|-------|----------------------|---------------------|-------------------|
| The Purge: Election Year | Universal City Studios Productions LLLP | PA1-995-003 | 7/11/2016 |
| Despicable Me 3 | Universal City Studios Productions LLLP | PA2-043-544 | 6/27/2017 |
| The Boss | Universal City Studios Productions LLLP | PA1-993-610 | 4/7/2016 |
| Jurassic World | Universal City Studios Productions LLLP; Amblin Entertainment LLC | PA1-946-359 | 6/10/2015 |
| The Shallows | Columbia Pictures Industries, Inc. | PA1-993-394 | 7/13/2016 |
| Miracles from Heaven | Columbia Pictures Industries, Inc. | PA1-981-803 | 4/7/2016 |
| Spiderman: Homecoming | Columbia Pictures Industries, Inc. | PA2-044-059 | 7/7/2017 |
| Rough Night | Columbia Pictures Industries, Inc. | PA2-041-774 | 6/30/2017 |
| Smurfs: The Lost Village | Columbia Pictures Industries, Inc. | PA 2-029-508 | 4/21/2017 |
| Pete's Dragon | Disney Enterprises, Inc. | PA1-998-053 | 8/26/2016 |
| The Finest Hours | Disney Enterprises, Inc. | PA1-989-069 | 5/27/2016 |
| Maleficent | Disney Enterprises, Inc. | PA1-899-203 | 6/10/2014 |
| Alice Through the Looking Glass | Disney Enterprises, Inc. | PA1-991-651 | 6/28/2016 |
| Into the Woods | Disney Enterprises, Inc. | PA1-932-175 | 2/11/2015 |
| Independence Day: Resurgence | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA1-994-450 | 7/22/2016 |
| Deadpool | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA1-977-152 | 3/4/2016 |
| Ice Age, Collision Course | Twentieth Century Fox Film Corporation | PA1-995-002 | 7/27/2016 |
| Ice Age: The Meltdown | Twentieth Century Fox Film Corporation | PA1-306-625 | 3/31/2006 |

Exhibit A
Page 22

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| War for the Planet of the Apes | Twentieth Century Fox Film Corporation; TSG Entertainment Finance LLC | PA2-044-947 | 7/25/2017 |
| Paranormal Activity: The Ghost Dimension | Paramount Pictures Corporation | PA1-960-100 | 10/23/2015 |
| Zoolander 2 | Paramount Pictures Corporation | PA1-974-008 | 2/16/2016 |
| 13 Hours: The Secret Soldiers of Benghazi | Paramount Pictures Corporation | PA1-969-757 | 1/19/2016 |
| Whiskey Tango Foxtrot | Paramount Pictures Corporation | PA1-977-149 | 3/4/2016 |
| Wonder Woman | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA2-036-078 | 6/6/2017 |
| Batman v. Superman: Dawn of Justice | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA1-981-624 | 3/30/2016 |
| Dunkirk | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA2-044-585 | 7/20/2017 |
| Harry Potter and the Deathly Hallows Part 1 | Warner Bros. Entertainment Inc. | PA1-721-904 | 3/4/2011 |
| Suicide Squad | Warner Bros. Entertainment Inc.; Ratpac-Dune Entertainment LLC | PA1-995-698 | 8/4/2016 |
| Bosch, Season 1, Episode 1 | Amazon Content Services LLC | PA2-000-165 | 2/10/2016 |
| The Man in the High Castle, Season 1, Episode 1 | Amazon Content Services LLC | PA2-006-699 | 1/15/2015 |
| Transparent, Season 1, Episode 1 | Amazon Content Services LLC | PA1-930-949 | 12/3/2014 |
| Mozart in the Jungle, Season 1, Episode 1 | Amazon Content Services LLC | PA1-963-304 | 3/23/2015 |
| Bosch, Season 1, Episode 1 | Amazon Content Services LLC | PA2-000-165 | 2/10/2016 |
| The Oa, Season 1, Episode 1 | Netflix Studios, LLC | PA2-029-045 | 1/18/2017 |

| Title | Copyright Registrants | Registration Number | Registration Date |
|---|---|---|---|
| Santa Clarita Diet, Season 1, Episode 1 | Netflix Studios, LLC | PA2-028-853 | 2/3/2017 |
| Stranger Things, Season 1, Episode 8 | Netflix Studios, LLC | PA2-009-908 | 9/26/2016 |
| Wet Hot American Summer: First Day of Camp, Season 1, Episode 1 | Netflix Studios, LLC | PA1-996-639 | 4/19/2016 |
| Easy, Season 1, Episode 1 | Netflix Studios, LLC | PA2-009-863 | 9/26/2016 |